E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

<table>
<tr><td colspan="2" align="center">IN THE IOWA DISTRICT COURT FOR SCOTT COUNTY</td></tr>
</table>

| | |
|---|---|
| JRG GROUP, LLC,<br><br>PLAINTIFF,<br><br>VS.<br><br>EASY STREET PROPERTY MANAGEMENT, LLC, QC RENTAL PROPS, LLC, MATTHEW LARSON, AND TRINA HANSSEN,<br><br>DEFENDANTS. | PETITION AND JURY DEMAND |

Plaintiff, JRG Group, LLC, by and through its undersigned attorneys, submits the following Petition and Jury Demand against Defendants, Easy Street Property Management, LLC, QC Rental Props, LLC, and Matthew Larson.

## PARTIES AND VENUE

1.      Plaintiff, JRG Group, LLC ("Plaintiff") is an Iowa limited liability company, with its principal place of business in Polk County, Iowa.

2.      Defendant Easy Street Property Management, LLC ("Easy Street") is an Iowa limited liability company with its principal place of business in Scott County, Iowa.

3.      Defendant QC Rental Props, LLC ("QC Rental Props") is an Iowa limited liability company with its principal place of business in Scott County, Iowa.

4.      Defendant Matthew Larson ("Larson") is a member and manager of Easy Street.

5.      Larson is a member and manager of QC Rental Props.

6.      Larson resides in Scott County, Iowa.

7.      Defendant Trina Hanssen ("Hanssen") was a broker and agent of Easy Street.

8.      Hanssen resides in Scott County, Iowa.

1

9.     This Court has jurisdiction over this matter.

10.    Venue is proper in this Court.

## COMMON ALLEGATIONS

11.    Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

12.    Plaintiff is engaged in the business of purchasing and leasing real property.

13.    On or about February 28, 2018, Plaintiff and QC Rental Props entered into an agreement for Plaintiff to purchase 915 Wells from QC Rental Props ("(915 Wells Purchase Agreement").

14.    A true and accurate copy of the 915 Wells Purchase Agreement is attached as Exhibit 1.

15.    On or about March 1, 2018, QC Rental Props provided Plaintiff with a real estate disclosure statement pertaining to 915 Wells as required by Chapter 558A Code of Iowa ("Seller Disclosure").

16.    A true and accurate copy of the Seller Disclosure is attached as Exhibit 2.

17.    The "INSTRUCTIONS TO SELLER(S)" in the Seller Disclosure provide:

    A.    Seller(s) must complete this statement.  Respond to all questions, or attached reports allowed by Iowa Code section 558A.4(2);

    B.    Disclose all known conditions materially affecting this property;

    C.    If an idem does not apply to this property, indicate it is not applicable (N/A);

    D.    Disclose information in good faith and make a reasonable effort to ascertain the required information.  If the required information is unknown or is unavailable following a reasonable effort, use an appropriate of the information, or indicate that the information is unknown (UNK).  All approximations must be identified as appropriations (AP).

    E.    Additional pages may be attached as needed:

    F.    Keep a copy of this statement with your other important papers.

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

18.   In or about 2018, JRG Group and QC Rental Props entered into a contract under which QC Rental Props agreed to rehabilitate 915 Wells (the "915 Wells Rehabilitation Agreement").

19.   QC Rental Props agreed to rehabilitate 915 Wells in accordance with industry standards.

20.   A list of services QC Rental Props was obligated to provide under the 915 Rehabilitation Agreement is attached as Exhibit 3.

21.   QC Rental Props failed to complete rehabilitation of 915 Wells.

22.   QC Rental Props did not rehabilitate 915 Wells in accordance with industry standards.

23.   On or about February 20, 2018, JRG Group and Easy Street entered into a contract under which Easy Street agreed to rehabilitate 201 North 20th (the "201 North 20th Rehabilitation Agreement").

24.   A list of services Easy Street was obligated to provide under the 201 North 20th Rehabilitation Agreement is attached as Exhibit 4.

25.   As part of the 201 North 20th Rehabilitation Agreement, Easy Street agreed to rehabilitate 201 North 20th so that 201 North 20th would consist of four units, each with two bedrooms and one bathroom.

26.   Easy Street agreed to rehabilitate 201 North 20th in accordance with industry standards.

27.   Easy Street failed to complete rehabilitation of 201 North 20th.

28.   Easy Street did not rehabilitate 201 North 20th in accordance with industry standards.

3

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

29.     One of the units at 201 North 20th does not have two bedrooms.

30.     On or about March 28, 2019, Plaintiff and Hanssen entered into a Quad City Area Realtor Association Illinois/Iowa-Agency/Dual Agency Disclosure Notice ("Dual Agency Notice").

31.     Attached hereto as Exhibit 5 is a true and accurate copy of the Dual Agency Notice.

32.     The Dual Agency Notice required Hanssen to, in part:

A.  Provide real estate brokerage services to all parties to the transaction honestly and in good faith;

B.  Disclose to each party all material adverse facts that the agent knows, except:

i.     Material adverse facts known by the party.

ii.    Material adverse facts the party could discover through a reasonably diligent inspection, and which would be discovered by a reasonably prudent person under like or similar circumstances; and

iii.   Material adverse facts the disclosure of which is prohibited by law.

C.  Endeavor to be impartial between both parties and will not represent the interest of either party to the exclusion or detriment of the other party.

33.     On March 28, 2019, Plaintiff and Easy Street entered into an Agreement – to Manage Real Estate with Easy Street ("Management Agreement").

34.     Attached hereto as Exhibit 6 is a true and accurate copy of the Management Agreement.

35.     Exhibit A attached to the Management Agreement is a List of Owner's Properties to be Managed (collectively, the "Properties").

36.     The Properties consist of eleven (11) separate houses, duplexes, or units which are each able to be separately leased:

      A.     1923 Pershing Street, Davenport, Iowa 52803;

      B.     1335 W. 13th Street #1, Davenport, Iowa 52801;

      C.     1335 W. 13th Street #2, Davenport, Iowa 52801;

      D.     702 S. 8th Street, Burlington, Iowa 52601;

      E.     915 Wells Street, Burlington, Iowa 52601 ("915 Wells");

      F.     1520 8th Avenue, East Moline, IL 61244;

      G.     1522 8th Avenue, East Moline, IL 61244;

      H.     201 N. 20th Street #1, East Moline, IL 61244;

      I.     201 N. 20th Street #2, East Moline, IL 61244;

      J.     201 N. 20th Street #3, East Moline, IL 61244; and

      K.     201 N. 20th Street #4, East Moline, IL 61244.

37.     In 2020, Plaintiff learned Easy Street had been mis-managing the Properties.

38.     Easy Street failed to use due diligence in the performance of the Management Agreement.

39.     Easy Street failed to appropriately advertise the Properties for rent.

40.     Easy Street failed to collect rent from tenants of the Properties.

41.     Easy Street failed to account for tenant payments with respect to the Properties.

42.     Easy Street failed to maintain separate trust accounts for tenant security deposits for the Properties.

43.     Easy Street converted tenant security deposits for the Properties to cash.

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

44.     Easy Street failed to transfer tenant security deposits for the Properties to the new property management company.

45.     Easy Street failed to appropriately maintain and repair the Properties.

46.     Easy Street failed to appropriately contract, hire, supervise, and/or discharge firms and persons required for the operation of the Properties.

47.     Easy Street did not timely remit funds relating to the Properties to Plaintiff.

48.     Easy Street did not appropriately disburse Plaintiff's funds.

49.     Easy Street overcharged Plaintiff for Easy Street's services.

50.     Easy Street took money Plaintiff provided to Easy Street for specific goods and services relating to the Properties and never utilized the money for such goods and services.

51.     Easy Street took money Plaintiff provided to Easy Street for the Properties and utilized the money for unrelated projects.

52.     Easy Street charged Plaintiff for goods and services Easy Street never provided with respect to the Properties.

53.     Easy Street failed to pay contractors for work relating to the Properties.

54.     Easy Street permitted liens to be filed on Properties.

55.     Easy Street failed to lease Properties.

56.     On February 25, 2021, Plaintiff sent provided notice to Easy Street that Plaintiff was terminating the Management Agreement ("Termination Notice").

57.     Attached hereto as Exhibit 7 is a true and accurate copy of the Termination Notice.

58.     On or about March 13, 2021, Easy Street provided Plaintiff with an "Owner Statement" alleging that Plaintiff owed Easy Street the sum of $3,013.48.

59.     Attached hereto as Exhibit 8 is a true and accurate copy of the Owner Statement.

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

60.    On March 25, 2021, Plaintiff's counsel sent a Demand for Mediation and Litigation Hold Demand on Easy Street ("Demand") to Easy Street.

61.    Attached hereto as Exhibit 9 is a true and accurate copy of the Demand.

62.    Easy Street refused to respond to the Demand.

### COUNT I – BREACH OF CONTRACT - EASY STREET
### (MANAGEMENT AGREEMENT)

63.    Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

64.    The Management Agreement constitutes a contract between Plaintiff and Easy Street.

65.    Plaintiff performed all of the terms and conditions required of it under the Management Agreement, or Easy Street prevented Plaintiff from performing all of the terms and conditions of the Management Agreement.

66.    Easy Street had an obligation to abide by the terms of the Management Agreement.

67.    Easy Street has breached the terms of the Management Agreement, including but not limited to paragraphs:

A.    2(a)

B.    3(a)

C.    3(b)

D.    3(c)

E.    3(e)

F.    3(f)

G.    3(g)

H.    3(h)

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

I.      3(i)

J.      3(j)

K.      3(k).

68.    Plaintiff has been damaged by Easy Street's breaches of the Management Agreement.

69.    Plaintiff is entitled to its reasonable attorney's fees.

WHEREFORE, Plaintiff respectfully requests that this Court grant it the relief sought in the Common Request for Relief, below.

## COUNT II — BREACH OF CONTRACT - QC RENTAL PROPS
### (915 WELLS REHABILITATION AGREEMENT)

70.    Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

71.    The 915 Wells Rehabilitation Agreement constitutes a contract between Plaintiff and QC Rental Props.

72.    Plaintiff performed all of the terms and conditions required of it under the 915 Wells Rehabilitation Agreement, or any breach of the 915 Wells Rehabilitation Agreement by Plaintiff was excused by QC Rental Props' actions.

73.    QC Rental Props had an obligation to abide by the terms of the 915 Wells Rehabilitation Agreement.

74.    QC Rental Props has breached the terms of the 915 Wells Rehabilitation Agreement.

75.    QC Rental Props cut a hole in the dining room floor and installed new stairs.

76.    QC Rental Props did not obtain a permit for the foregoing.

77.    The new stairs are not to code.

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

78.     The project was red tagged for all construction.

79.     The project was red tagged due to a lack of permits.

80.     QC Rental Props did not install sashes for newly installed windows.

81.     QC Rental Props did not re-side the property.

82.     QC Rental Props did not replace the porch roof.

83.     QC Rental Props did not properly repair joists in the basement.

84.     915 Wells will not pass a rental inspection.

85.     Plaintiff has been damaged by QC Rental Props' breaches of the 915 Wells Rehabilitation Agreement.

WHEREFORE, Plaintiff respectfully requests that this Court grant it the relief sought in the Common Request for Relief, below.

### COUNT III — BREACH OF CONTRACT - EASY STREET
### (201 NORTH 20TH REHABILITATION AGREEMENT)

86.     Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

87.     The 201 North 20th Rehabilitation Agreement constitutes a contract between Plaintiff and Easy Street.

88.     Plaintiff performed all of the terms and conditions required of it under the 201 North 20th Rehabilitation Agreement, or any breach of the 201 North 20th Rehabilitation Agreement by Plaintiff was excused by Easy Street's actions.

89.     Easy Street had an obligation to abide by the terms of the 201 North 20th Rehabilitation Agreement.

90.     Easy Street has breached the terms of the 201 North 20th Rehabilitation Agreement.

91.     Plaintiff has been damaged by Easy Street's breaches of the 201 North 20th

Rehabilitation Agreement.

WHEREFORE, Plaintiff respectfully requests that this Court grant it the relief sought in the Common Request for Relief, below.

### COUNT IV — VIOLATION OF IOWA CODE CHAPTER 558A – QC RENTAL PROPS

92.　　Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

93.　　The Seller Disclosure is not accurate.

94.　　QC Rental Props did not report all repairs to 915 Wells.

95.　　QC Rental Props did not report all replacements at 915 Wells.

96.　　QC Rental Props did not disclose all known conditions materially affecting 915 Wells.

97.　　QC Rental Props did not disclose issues with the foundation.

98.　　The foregoing is a known condition materially affecting 915 Wells.

99.　　QC Rental Props did not disclose leaks in the roof.

100.　　The foregoing is a known condition materially affecting 915 Wells.

101.　　QC Rental Props did not disclose fire damage to the roof.

102.　　The foregoing is a known condition materially affecting 915 Wells.

103.　　QC Rental Props did not disclose rotten parts of the roof.

104.　　The foregoing is a known condition materially affecting 915 Wells.

105.　　QC Rental Props did not disclose issues with the furnace.

106.　　The foregoing is a known condition materially affecting 915 Wells.

107.　　QC Rental Props did not disclose issues with the plumbing.

108.　　The foregoing is a known condition materially affecting 915 Wells.

109.    QC Rental Props did not disclose issues with the electrical system.

110.    The foregoing is a known condition materially affecting 915 Wells.

111.    QC Rental Props did not disclose the existence of a common alley.

112.    The foregoing is a known condition materially affecting 915 Wells.

113.    QC Rental Props did not disclose issues with settling.

114.    The foregoing is a known condition materially affecting 915 Wells.

115.    QC Rental Props did not disclose damage to load bearing walls.

116.    The foregoing is a known condition materially affecting 915 Wells.

117.    QC Rental Props did not disclose all information in good faith.

118.    QC Rental Props did not make a reasonable effort to ascertain the required information.

119.    If the required information was unknown or unavailable following a reasonable effort, QC Rental Props did not use an appropriation of the information, or indicate that the information was unknown.

120.    Plaintiff have been damaged by QC Rental Props' violation of Iowa Code Chapter 558A.

WHEREFORE, Plaintiff respectfully requests that this Court grant it the relief sought in the Common Request for Relief, below.

**COUNT V – FRAUDULENT MISREPRESENTATION – QC RENTAL PROPS**

121.    Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

122.    QC Rental Props made representations to Plaintiff regarding the conditions at 915 Wells.

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

123.    QC Rental Props made representations to Plaintiff that it intended to, and would abide by the terms of the Management Agreement.

124.    QC Rental Props' representations were false.

125.    QC Rental Props knew its representations were false.

126.    QC Rental Props' representations were material.

127.    QC Rental Props intended to deceive Plaintiff.

128.    QC Rental Props intended for Plaintiff to rely on the representations.

129.    Plaintiff acted in reliance on the truth of QC Rental Props' representations.

130.    Plaintiff was justified in relying on QC Rental Props' representations.

131.    QC Rental Props' representations were a cause of Plaintiff's damage.

132.    Plaintiff has suffered damage due to QC Rental Props' representations.

WHEREFORE, Plaintiff respectfully requests that this Court grant it the relief sought in the Common Request for Relief, below.

### COUNT VI – FRAUDULENT CONCEALMENT – QC RENTAL PROPS

133.    Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

134.    QC Rental Props had substantially superior knowledge of the conditions at 915 Wells.

135.    In making its decision to purchase 915 Wells, Plaintiff relied upon QC Rental Props' superior knowledge regarding the conditions at 915 Wells.

136.    QC Rental Props concealed or suppressed materials facts regarding the conditions at 915 Wells.

137.    As a result, Plaintiff has suffered damages.

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

WHEREFORE, Plaintiff respectfully requests that this Court grant it the relief sought in the Common Request for Relief, below.

### COUNT VII — FRAUDULENT MISREPRESENTATION – EASY STREET

138.    Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

139.    Easy Street made representations to Plaintiff, including that it intended to, and would abide by the terms of the Management Agreement.

140.    Easy Street's representations were false.

141.    Easy Street knew the representations were false.

142.    Easy Street's representations were material.

143.    Easy Street intended to deceive Plaintiff.

144.    Plaintiff acted in reliance on the truth of Easy Street's representations.

145.    Plaintiff was justified in relying on Easy Street's representation.

146.    Easy Street's representations were a cause of Plaintiff's damage.

WHEREFORE, Plaintiff respectfully requests that this Court grant it the relief sought in the Common Request for Relief, below.

### COUNT VIII — FRAUDULENT MISREPRESENTATION – HANSSEN

147.    Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

148.    Hanssen made representations to Plaintiff, including that she intended to, and would abide by the terms of the Dual Agency Notice.

149.    Hanssen's representations were false.

150.    Hanssen knew the representations were false.

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

151.    Hanssen's representations were material.

152.    Hanssen intended to deceive Plaintiff.

153.    Plaintiff acted in reliance on the truth of Hanssen's representations.

154.    Plaintiff was justified in relying on Hanssen's representation.

155.    Hanssen's representations were a cause of Plaintiff's damage.

WHEREFORE, Plaintiff respectfully requests that this Court grant it the relief sought in the Common Request for Relief, below.

## COUNT IX - PETITION TO PIERCE THE CORPORATE VEIL – EASY STREET

156.    Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

157.    At all times relevant hereto Larson was a manager of Easy Street.

158.    At all times relevant hereto Larson was a member of Easy Street.

159.    Easy Street is, and was, undercapitalized.

160.    Larson controlled and dominated Easy Street through his positions as member and manager.

161.    Easy Street was used to promote fraud or illegalities, not only on Plaintiff, but also on other individuals and entities.

162.    Easy Street was used primarily as an intermediary to perpetuate fraud or promote injustice.

163.    The corporate formalities were not followed.

164.    Easy Street is a mere sham.

165.    The purported distinct corporate status of Easy Street should be disregarded.

166.    Respecting the corporate form of Easy Street would promote injustice and inequity with respect to Easy Street's creditors, including Plaintiff.

167.    Larson should be held personally responsible for Easy Street's debts.

168.    Piercing the corporate veil would further the public convenience, cure wrongs, protect against fraud, and advance the ends of justice.

WHEREFORE, Plaintiff respectfully requests that this Court grant it the relief sought in the Common Request for Relief, below.

## COUNT X - PETITION TO PIERCE THE CORPORATE VEIL – QC RENTAL PROPS

169.    Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

170.    At all times relevant hereto Larson was a manager of QC Rental Props.

171.    At all times relevant hereto Larson was a member of QC Rental Props.

172.    QC Rental Props is, and was, undercapitalized.

173.    Larson controlled and dominated QC Rental Props through his positions as member and manager.

174.    QC Rental Props was used to promote fraud or illegalities, not only on Plaintiff, but also on other individuals and entities.

175.    QC Rental Props was used primarily as an intermediary to perpetuate fraud or promote injustice.

176.    The corporate formalities were not followed.

177.    QC Rental Props is a mere sham.

178.    The purported distinct corporate status of QC Rental Props should be disregarded.

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

179.    Respecting the corporate form of QC Rental Props would promote injustice and inequity with respect to QC Rental Props' creditors, including Plaintiff.

180.    Larson should be held personally responsible for QC Rental Props' debts.

181.    Piercing the corporate veil would further the public convenience, cure wrongs, protect against fraud, and advance the ends of justice.

WHEREFORE, Plaintiff respectfully requests that this Court grant it the relief sought in the Common Request for Relief, below.

## COUNT XI – PUNITIVE DAMAGES

182.    Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

183.    Defendants' conduct constitutes willful and wanton disregard for the rights or safety of another.

184.    Defendants acted in bad faith, vexatiously, wantonly, and for oppressive reasons.

185.    Defendants' conduct was directed specifically at Plaintiff.

186.    Plaintiff is entitled to punitive damages.

WHEREFORE, Plaintiff respectfully requests that this Court grant it the relief sought in the Common Request for Relief, below.

## COMMON REQUEST FOR RELIEF

WHEREFORE, Plaintiff, JRG Group, LLC, respectfully requests that this Court enter an order against Defendants, Easy Street Property Management, LLC, Matthew Larson, and Trina Hanssen, jointly and severally, as appropriate:

A.    Awarding Plaintiff compensatory damages;

B.    Piercing East Street's corporate veil;

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

C.      Piercing QC Rental Props' corporate veil;

D.      Holding Matthew Larson personally liable for Easy Street's debts;

E.      Holding Matthew Larson personally liable for QC Rental Props' debts;

F.      Awarding Plaintiff punitive damages;

G.      Awarding Plaintiff reasonable attorneys' fees, costs and expenses;

H.      Awarding Plaintiff pre- and post-judgment interest at the rate of 5% per annum;

I.       Awarding Plaintiff the costs of this action, and

J.       Granting Plaintiff such additional relief as the Court deems just and appropriate.

### JURY DEMAND

Plaintiff, JRG Group, LLC, hereby demands a trial by jury on all issues so triable.

BRICK GENTRY P.C.

By:   /s/ Daniel P. Kresowik
Daniel P. Kresowik    AT0008910
6701 Westown Parkway, Suite 100
West Des Moines, IA  50266
Telephone:  515-274-1450
Facsimile:  515-274-1488
E-mail:  dan.kresowik@brickgentrylaw.com

ATTORNEYS FOR PLAINTIFF

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT



# SCOPE OF WORK <u>201 N 20th St East Moline IL 61244</u>



Date: Feburary 20, 2018

Exhibit 4 - Page 1 of 8

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

Page 2

**Easy Street Property Investments LLC**

5001 Tremont Ave

Davenport IA 52807

Phone: 563-514-4327

# Scope of Work

201 N 20th St East Moline IL 61244

## Table of Contents:

Project Introduction & Overview................................................................................................3

Exterior ................................................................................................................................4

Interior .................................................................................................................................5

Kitchen .................................................................................................................................6

Bathrooms.............................................................................................................................7

Bedrooms ..............................................................................................................................8

Additional Items .....................................................................................................................9

Easy Street Properties LLC
5001 Tremont Ave
Davenport IA 52807
Phone: 563-514-4327

Exhibit 4 - Page 2 of 8

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

# Scope of Work

### Project Introduction and Overview

### Rehab Overview

Property is in need of interior and exterior renovations. Our goal for this property is to rehab to rent ready condition and therefore, on the interior, we will add brand new carpet and flooring as needed throughout the house, repair, prep, and paint walls and ceilings, replace kitchen appliances, replace toilet, faucets, and vanity in the bathroom(s), as well as replace switches, outlet covers, and lights as needed. On the exterior, we will remove all trash, replace windows and screens as needed, repair and replace doors, clear the drains, and perform exterior light landscaping.

### Contractor Overview

Multiple contractors are needed to complete this project. Licensed contractors will be used for electrical, plumbing, and HVAC upgrades.

**Total Project Cost: $50,000**

Easy Street Properties LLC
5001 Tremont Ave
Davenport IA 52807
Phone: 563-514-4327

Exhibit 4 - Page 3 of 8

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

# Scope of Work

## Exterior Pictures

BEFORE



AFTER



## Work Performed:

| | |
|---|---|
| Repaired all windows to open and lock | Removed all trash and hauled away |
| Installed deadbolts on exterior doors | Installed house numbers on house to be visible from the street |
| Installed handrails on any homes with 3 or more steps | Sump pump installed in basement |
| Gutters properly attached and cleaned | Pressure washed house, driveway, porch, and walkway |
| Porches painted and exterior re-painted | New light fixtures installed |
| Replace rotten wood around house | Repair and replace windows and screens as needed |
| Fascia, soffits, and window trims covered, replaced, or painted | Any holes in foundation fixed |
| If applicable, garage doors checked to function and lock | Any broken siding fixed |

Easy Street Properties LLC
5001 Tremont Ave
Davenport IA 52807
Phone: 563-514-4327

Exhibit 4 - Page 4 of 8

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

# Scope of Work

## Interior Pictures

BEFORE



AFTER



## Work Performed:

| | |
|---|---|
| Hot water heater and furnace checked- replaced if needed | Walls and ceilings repaired, prepped, and painted |
| Repaired/replaced carpet throughout house | Kitchen cabinets painted, countertop and sink replaced |
| Replaced all light figures, fans, and bulbs | Toilet, vanity, and medicine cabinet replaced in bathrooms |
| Replaced all outlets, switches, covers and GFI's added | Interior doors replaced as needed |
| Installed vinyl tile floor in bathroom and kitchen | New light fixtures installed |
| Installed smoke and CO2 detectors and checked to function | Kitchen appliances replaced |
| All faucets replaced | Remove all trash |
| Replace door handles and blinds as necessary | Clean interior thoroughly |

Easy Street Properties LLC
5001 Tremont Ave
Davenport IA 52807
Phone: 563-514-4327

Exhibit 4 - Page 5 of 8

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

# Scope of Work

### Kitchen

BEFORE

   

AFTER



## Work Performed

- New light fixtures
- New vinyl tile flooring
- Painted cabinets
- New hardware on cabinets
- New countertops
- Replaced refrigerator
- Replaced microwave
- Replaced stove
- Painted walls
- Cleaned thoroughly

*Easy Street Properties LLC*
5001 Tremont Ave
Davenport IA 52807
Phone: 563-514-4327

Exhibit 4 - Page 6 of 8

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

Page 7

# Scope of Work

## Bathrooms

BEFORE



AFTER



## Work Performed

- New light fixtures
- New vinyl tile flooring
- Painted cabinets
- New hardware on cabinets
- New toilet and faucets
- Replaced vanity and medicine cabinet
- GFI's added
- Outlets, switches, and lights replaced
- Painted walls
- Cleaned thoroughly

Easy Street Properties LLC
5001 Tremont Ave
Davenport IA 52807
Phone: 563-514-4327

Exhibit 4 - Page 7 of 8

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

# Scope of Work

### Bedrooms

BEFORE

   

AFTER



## Work Performed

- New light fixtures
- New Carpet
- Repaired, prepped, and painted walls
- Repaired or replaced doors where needed
- Ensured all doors closed and locked as needed
- Replaced door handles
- Repaired windows and ensured they open and lock
- Replaced blinds
- Outlets, switches, and lights replaced
- Cleaned thoroughly

Easy Street Properties LLC
5001 Tremont Ave
Davenport IA 52807
Phone: 563-514-4327

Exhibit 4 - Page 8 of 8

E-FILED 2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT



## Quad City Area REALTOR® Association
### ILLINOIS/IOWA-AGENCY/ DUAL AGENCY DISCLOSURE NOTICE



Our Company is pleased to assist you in connection with the purchase, sale and/or lease of real estate.  The following will govern the terms of

your relationship with _____ Trina Hanssen (Easy Street Property Management, LLC.) _____ as

its Appointed/Designated Agent to represent ___JRG Group, LLC._____

in connection with the possible purchase, sale and/or lease of real estate. Term of client shall hereafter refer to seller, buyer, landlord, tenant, optionor or optionee. Only the Appointed/Designated Agent will represent the client(s) named above (together with any additional Appointed/Designated Agent who may be designated by our company hereafter). No other broker or sales associate affiliated with our company will be acting as an agent for the client(s) named above.  It is the policy of our company to offer real estate services exclusively through Appointed/Designated Agents with respect to Illinois/Iowa real estate.  The Appointed/Designated Agent and other company sales associates may provide services simultaneously to other parties involving the same real estate.  When representing the buyer, tenant, or optionee our company and the Appointed/Designated Agent will generally be offered and will accept a commission from the seller, landlord, or optionor or the seller, landlord, or optionor's real estate agent, who may not be a client of our company or the Appointed/Designated Agent.  It is the policy of our company to reciprocate other broker's offers to cooperate and compensate.  It is also the policy of our company to neither offer subagency to or accept subagency from cooperating brokers.

### DUTIES TO ALL PARTIES
A real estate agent, including the Appointed/Designated Agent, has the following duties to all parties to a transaction, regardless of which party the agent represents:
A.  To provide real estate brokerage services to all parties to the transaction honestly and in good faith;
B.  To diligently exercise reasonable skill and care in providing brokerage services to all parties;
C.  To disclose to each party all material adverse facts that the agent knows, except for the following:
    1.  Material adverse facts known by the party.
    2.  Material adverse facts the party could discover through a reasonably diligent inspection, and which would be discovered by a reasonably prudent person under like or similar circumstances.
    3.  Material adverse facts the disclosure of which is prohibited by law.
D.  Material adverse facts that are known to a person who conducts an inspection on behalf of a party.  A "material adverse fact" means an adverse fact that a party indicates is of such significance, or that is generally recognized by a real estate agent as being of such significance to a reasonable party, that it affects or would affect a party's decision to enter into a contract or agreement concerning a transaction, or affects or would affect a party's decision about the terms of a contract or agreement.
E.  To account for all property coming into the possession of the agent that belongs to any party within a reasonable time of receiving the property.

### DUTIES TO A CLIENT
In addition to the real estate agent's duties to all parties as provided above, a real estate agent, including the Appointed/Designated Agent, has the following duties to the agent's client(s):
A.  To place the client's interests ahead of the interests of any other party, unless the agent is acting as a disclosed dual agent, as discussed below;
B.  To disclose to the client all information known by the agent that is material to the transaction and that is not known by the client or could not be discovered by the client through a reasonably diligent inspection;
C.  To fulfill any obligation that is within the scope of the agency agreement, except those obligations that are inconsistent with other duties that the agent has under the law;
D.  To disclose to the client any financial interests the agent or the brokerage has in any business entity to which the agent or brokerage refers a client for any service or product related to a transaction.

### DUTIES OF A DISCLOSED DUAL AGENT
An Appointed/Designated Agent may legally represent both the seller, landlord, or optionor and the buyer, tenant, or optionee in a transaction, but only with the prior knowledge and the written consent of both parties.  This is called "Dual Agency".  The Appointed/Designated Agent will be acting as a Dual Agent when he or she represents both the owner/seller, landlord, or optionor and the prospective buyer, tenant, or optionee.  This means that when the Appointed/Designated Agent is the listing agent and the selling agent, the Appointed/Designated Agent will be representing both parties simultaneously.  When acting as Dual Agent, the agent has the same Duties to All Parties and Duties to A Client, as set forth above, EXCEPT, a Dual Agent may not and does not have a duty to place one client's interests ahead of the interests of the other client.  Representing more than one party to a transaction may present a conflict of interest since both clients may rely upon Appointed/Designated Agent's advice and Buyer, Tenant, or Optionee and Seller's, Landord, or Optionor respective interests may be adverse to each other.  The Appointed/Designated Agent will endeavor to be impartial between both parties and will not represent the interest of either party to the exclusion or detriment of the other party.  Appointed/Designated Agent will act as a dual agent only with the written consent of ALL parties in the transaction.

By signing this agreement the client agrees that the Appointed/Designated Agent may act as a Disclosed Dual Agent when the agent represents both the seller, landlord, or optionor and the buyer, tenant, or optionee.  Parties are not required to participate in Disclosed Dual Agency.

### ACKNOWLEDGEMENT AND CONSENT TO AGENCY/DUAL AGENCY NOTICE
I (We) acknowledge that I(we) have read this document, and that our company and the Appointed/Designated   Agent have made full disclosure of the client(s) the Appointed/Designated Agent represents, the duties of a real estate agent to the parties, and the type of representation the agent will provide.  I(We) consent to the Appointed/Designated/

Designated Agency policy and the designation of _____ as our Appointed/Designated Agent.  I(We) have read and understand this statement, have asked questions I(we) have deemed appropriate regarding this disclosure and agreement, and I(we) acknowledge signing and receiving a copy of this document before receiving any specific assistance from the Appointed/Designated Agent or making or accepting an offer, which ever is sooner.

## IF YOU DO NOT UNDERSTAND ALL THE TERMS OF THIS DOCUMENT, SEEK LEGAL ADVICE BEFORE SIGNING.

**Client's Signature(s):**

Guy Varble - Member

Printed Name

*Guy Varble – Member*                         03/28/2019

Signature                                              Date

Printed Name

Signature                                              Date

Rev 10/15

**Appointed/Designated Agent's Signature**

*Trina Hanssen*

Printed Name

*Trina R. Hanssen*          03/28/2019

Signature                                              Date

Exhibit 5 - Page 1 of 1    Doc ID: 38e9fe99c8a6c0f11efe76b1ffdfba86166c387b

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

# EASY STREET
## PROPERTY MANAGEMENT

### AGREEMENT -TO MANAGE REAL ESTATE

THIS AGREEMENT dated as of the _03/28/2019_ by and between, __JRG Group, LLC.__ as principal (herein collectively referred to as "Owner"), and Easy Street Property Management, LLC a Corporation chartered in the State of Iowa, hereafter referred to as "Broker" as agent, shall be in effect for a period of 12 months, ending _03 / 28 / 2020_

Easy Street Property Management, LLC  is affiliated with the following companies: Maintenance Pro Team, Easy Street Property Investments, Future Capital, Quiet Capital, LLC and QCA Holdings, LLC.

### WITNESSETH

WHEREAS, Owner owns the tracts of real estate legally described in "Exhibit A" attached hereto and made a part hereof; and

WHEREAS, Owner desires to appoint Broker/Managing Partner as Owner's agent to handle, manage and control the real estate described in said "Exhibit A," and also such other real estate as may be added to said "Exhibit A" from time to time by mutual agreement of the parties, hereinafter collectively called the "Properties" in accordance with the terms and conditions set forth herein.

NOW, THEREFORE, for proof and valuable consideration, the receipt and sufficiency of which is hereby acknowledged and agreed, Owner and Broker/Managing Partner agree as follows:

1. TERM AND TERMINATION.

   (a)     The initial term ("Term") of this Agreement shall be one (1) year. After the initial Term, this Agreement shall automatically renew on a Year-to-year basis, with all terms and conditions remaining in full force and effect.

   (b)     Either party may terminate this Agreement by serving upon the other thirty (30) days written notice, with or without breach by the other party. In the event of any termination of this Agreement by Owner without breach by Broker/Managing Partner, or by Broker/Managing Partner due to breach of Owner, Broker/Managing Partner shall receive the balance of any commissions due for 30 days from the date of notice. In the event this Agreement is terminated by Owner due to Broker/Managing Partner's breach of any term of this Agreement, or by Broker/Managing Partner without breach by Owner, Broker/Managing Partner shall not be entitled to any commissions after the date of termination.

   (c)     If either party believes the other party is in breach of this Agreement, such party shall serve notice of such breach, stating with particularity the circumstances surrounding such alleged breach and demanding that such breach be cured within ten (10) business days. If such breach is cured within such ten (10) business day period, neither party may terminate the Agreement as a result of such breach for purposes of Section I(b) hereof. If such breach is not cured within such ten (10) business days, party bringing notice shall have option to terminate the agreement immediately or as desired.

E-FILED 2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

2. Easy Street Property Management, LLC accepts the appointment and agrees to:

    (a)    Use due diligence in the performance of the Agreement.

    (b)    Furnish the services of its organization for the rental and leasing divisions of the Properties management.

3, AUTHORITY AND POWERS: Owner grants to Broker/Managing Partner the authority and power, at Owner's expense as set forth in Section 5 hereof and as explicitly set forth in this Section 3, to:

    (a)    RENTING OF PREMISES: Display "For Rent," "For Lease," "Managed By," and similar signs on the Property; advertise the availability for rental or lease of the Property or any part of it; initiate, sign, or cancel rental agreements and leases for the Property or any part of it; to sign and serve for the Owner such notices as are deemed necessary by the Broker/Managing Partner; and to adjust rents according to market demand. Any lease executed by Broker/Managing Partner for Owner shall not exceed 24 months.

    (b)    COLLECTION OF RENT: Owner authorizes Broker/Managing Partner to collect rents and other income, to give receipts, and to deposit all funds collected.

    (c)    SECURITY DEPOSITS: A security/damage/cleaning deposit shall be collected from the tenants by the Broker/Managing Partner at the beginning of each new lease and deposited in separate trust account.

    (d)    LEGAL PROCEEDINGS: With Owner's prior written approval, Owner authorizes Broker/Managing Partner to institute legal actions in the name of the Owner to recover possession of the Property; sue for and recover rent; settle, compromise, and release such actions or suits or reinstate tenancies; to place accounts for collections as deemed necessary. Owner shall reimburse Broker/Managing Partner for all expenses of litigation including filing fees and court costs. Fees exceeding $500.00 will require the approval of the Owner. In the event that an attorney is utilized the Owner will be responsible for paying all attorneys' fees directly to the attorney. Broker/Managing Partner assumes no liability for monies that are uncollectible nor for any damages or costs related to the tenancy and the property. In no event will the Broker/Managing Partner or leasing agent provide legal advice to the Owner, or act as Owner's attorney. In all situations Broker/Managing Partner advises Owner to use their own attorney.

    (e)    MAINTENANCE AND REPAIR: Make, cause to be made, and/or supervise repairs, improvements, alterations, and decorations to the Property; purchase and pay bills for services and supplies, Broker/Managing Partner shall obtain prior approval of Owner on all expenditures over $250.00 (Two hundred-fifty dollars) for any one item and expenditures in excess of $500 in any 30-day period. Prior approval shall not be required for monthly or recurring operating charges agreed to by Owner in advance, or if in Broker/Managing Partner's good faith opinion emergency expenditures over the maximum are needed to protect the Properties from damage, prevent injury to persons, avoid suspension of necessary services, avoid penalties, fines, or suspension of services to tenants called for in a lease or rental agreement or by law.

    (f)    CONTRACTS AND SERVICES: Contract, hire, supervise and/or discharge firms and persons, including utilities, required for the operation and maintenance of the Property. Broker/Managing Partner shall obtain prior written approval of any contract which would obligate Owner to pay in excess of $50 per month. Broker/Managing Partner may perform any of Broker/Managing Partner's duties through attorneys, agents, employees, independent contractors, and shall not be responsible for their acts, omissions, defaults, negligence, and/or costs of same, except for persons working in Broker/Managing Partner's firm.

    (g)    RESERVES: Maintain $300.00 as a reserve in Broker/Managing Partner's working account plus any non refundable fees collected from tenant (ex: Pet Fee)

    (h)    OWNER STATEMENTS: Broker/Managing Partner shall render to Owner, not less frequently than monthly, statements of receipts, expenses and charges for each Property. Original receipts shall be

Exhibit 6 - Page 2 of 6

retained in Broker/Managing Partner's permanent records. Copies of invoices shall be forwarded to Owner upon request.

(i)     OWNER DISTRIBUTION: Remit funds monthly, to Owner, no later than the 25th day of each month, in accordance with Paragraph 3(j).

(j)     DISBURSEMENTS: Disburse Owner's funds in the following order:

1.   Fees, charges, commissions and reimbursements due under this Agreement.

2.   All other operating expenses, costs, and disbursements payable from the Owner's funds held by Broker/Managing Partner.

3.   Reserves as described in 3(g) above.

4.   Balance to Owner.

(k) Broker/Managing Partner agrees to indemnify, defend and hold harmless Owner, its managers, members, employees, volunteers and agents, from all costs, expenses, suits, liabilities, damages, and claims of every type (including attorney fees), including but not limited to those arising out of injury or death of any person(s) or damage to any real or personal property or any person(s), arising from any grossly negligent, reckless or intentional act or omission by Broker/Managing Partner, its employees or agents in the management, rental, maintenance or operation of the Property.

4.     OWNER RESPONSIBILITIES: Owner shall:

(a)     Provide all documentation and records required to manage and operate the Property.

(b)     Indemnify, defend and hold harmless Broker/Managing Partner and all persons in Broker/Managing Partner firm, from all costs, expenses, suits, liabilities, damages, and claims of every type (including attorney fees), including but not limited to those arising out of injury or death of any person(s), or damage to any real or personal property of any person(s), arising from any grossly negligent, reckless or intentional act or omission by Owner, its employees or agents (other than Broker/Managing Partner, its employees and agents in the management, rental, or operation of the Property).

(c)     Carry and pay for public and premises liability, property damage, and insurance adequate to protect the interest of Owner and Broker/Managing Partner, and shall name both as insured parties. Owner shall supply proof of insurance to Broker/Managing Partner upon written request.

5.     COMPENSATION:

(a)     Owner agrees to pay Broker/Managing Partner fees as indicated for:

Management: 10% of gross monthly collections from Property, which includes any and all concessions granted by Owner, security deposits forfeited and applied, and any other moneys collected from Property (i.e. Laundry revenues), including collections made by Owner or others designated by Owner.

Renting or Leasing: The owner is charged 75% of the first month's rent when a new lease is signed. The Broker/Managing Partner agrees not to collect an additional renting or leasing fee for nine (9) months from placement. There is no lease fee charged if the tenant renews an existing lease. For the purpose of this provision first month's rent shall not be reduced due to any "move in" specials and if rents are graduated the first month's rent shall be calculated by averaging all rents to be paid. Payment shall be due the sooner of lease execution or possession by the Tenant. If Owner requests Broker/Managing Partner to perform services not included in normal property management or specified above, Broker/Managing Partner shall be compensated at the rate of ninety five dollars ($95.00) per hour.

3

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

(b)     Owner further agrees that:

Broker/Managing Partner is entitled to receive 100% of all fees, charges, and interest from tenants for: (i) requesting an assignment of lease or sublease of the Property, (ii) processing credit applications, (iii) interest on security deposits, and (iv) other services that are not in conflict with this Agreement (v) late and NSF fees.

(c)     Owner further agrees that:

Broker/Managing Partner may perform any of its duties, and obtain necessary products and services, through affiliated companies or organizations known as : Maintenance Pro Team, Easy Street Property Investments, Future Capital, Quiet Capital, LLC and QCA Holdings, LLC., in which Broker or Leasing Agent, may own an interest, and may receive fees, commissions, and/ or profits from these affiliated companies or organizations. Broker or leasing Agent shall disclose all relevant facts regarding any such relationship to Owner and obtain Owner's prior written approval of any such relationship. Reps Property Maintenance is owned by owner. Broker shall not receive fees, commissions or profits from unaffiliated companies in the performance of this Agreement without prior disclosure to and agreement of Owner.

6.     NOTICES: Any written notice to Broker/Managing Partner required under this Agreement shall be served by sending such notice by first class mail to that party at the address below, or at any different address which the parties may later designate for this purpose, and shall be deemed received three business days after deposit into the United States mail. Communication to the owner is to be by e-mail as the first choice, or phone, as the second choice.

7.     BINDING AGREEMENT: This Agreement shall be binding upon Owner and Broker/Managing Partner and their respective heirs, administrators, executors, successors, and assigns.

8.     EQUAL HOUSING OPPORTUNITY: The Property is offered in compliance with federal, state, and local anti-discrimination laws.

9.     MEDIATION OF DISPUTES / CHOICE OF FORUM / ATTORNEY'S FEES: Owner and Broker/Managing Partner agree to mediate any dispute or claim between them arising out of this contract or any resulting transaction before resorting to arbitration or court action. In any action, proceeding, or arbitration arising out of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees.

10.     ENTIRE AGREEMENT: No oral agreements have been made. This contract is the entire Agreement between the parties, and it may be modified only in writing, signed by all parties.

11.     SEVERABILITY: Any provisions of the Agreement found to be invalid or in violation of any statute, rule, regulation, or common law shall be considered null and void, with the remaining provisions remaining valid and in effect

12.     COUNTERPARTS; SIGNATURES. This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which together shall constitute one agreement. Facsimile signature shall have the same force and effect as an original signature. The parties agree that this Agreement shall be legally binding upon the electronic transmission, including by facsimile or email of .pdf files, by each party of a signed signature page to this Agreement to the other party.

[signature page follows]

Exhibit 6 - Page 4 of 6   Doc ID: 0ad282e4534bf55e

E-FILED 2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

_____
Guy Varble - Member

**MANAGER for OWNER:**

*Guy Varble – Member*
_____     _____
Signature                                                         03/28/2019
                                                                              Date

_____     _____
Signature                                                         Date

Address for notices:

3810 66th St. Urbandal

**BROKER:**

Easy Street Property Management, LLC

*Trina Hanssen*
_____     _____
Signature                                                         03 / 28 / 2019
                                                                              Date

Address for notices:

Easy        Street        Property

Management, LLC

5001 Tremont Ave

Davenport, IA 52807

5

Exhibit 6 - Page 5 of 6 Doc ID: 8360f1994f8a63011a4af782d4f8d663098d3570c

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

"EXHIBIT A"

List of Owner's Properties to be Managed

1.   1335 W. 13th St. Davenport, IA 52801

2.   1520/1522 8th Avenue East Moline, IL 61244

3.   1923 Pershing Ave Davenport, IA 52803

4.   201 N. 20th St. East Moline, IL 61244

5.   702 S 8th St Burlington, IA 52601

6.

7.   915 Wells St Burlington, IA 52601

8.

9.

10.

11.

12.

13.

14.

15.

16.

17.

18.

19.

20.

21.

Exhibit 6 - Page 6 of 6 Doc ID: 8850fe99d8ac6011aebf782d48d836092c35f10c

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

 **JRG GROUP, LLC**

February 25, 2021

Easy Street Property Management, LLC
Trina Hanssen
5001 Treemont Ave
Davenport, IA 52807

RE: Cancellation of Property Management

Easy Street Property Management and Trina Hanssen:

Let this letter serve as notification that we are cancelling the property management agreement as of 3/25/2021.

We are hiring Rent QC, LLC (MillTown Realty) to manage our properties as of 3/15/2021.

Please work with J.C. Millman and Holly Miles to facilitate a smooth transition for our tenants:

Items Requested (for each property):

1) Tenant Lease
2) Tenant Rent Roll and statement
3) Keys
4) Security Deposits (transfer to Rent QC)
5) Money held in reserve (transfer to Rent QC)
6) Close out accounting of each property sent to us (to include a breakdown of money transferred)

Properties being transferred (all properties under management):

923 Pershing Ave, Davenport, IA 52803
1335 W. 13th St.#1,  Davenport, IA 52801
1335 W. 13th St.#2,  Davenport, IA 52801
702 S 8th St, Burlington, IA 52601
1520 8th Avenue East Moline, IL 61244
1522 8th Avenue East Moline, IL 61244

201 N. 20th St. #1,  East Moline, IL 61244
201 N. 20th St. #2,  East Moline, IL 61244
201 N. 20th St. #3,  East Moline, IL 61244
201 N. 20th St. #4,  East Moline, IL 61244
915 Wells Street Burlington, IA 52601

Cordially,

Guy Varble
Memeber

3810 66th St.  ---  Urbandale, IA 59322  ---  515-686-8000

Exhibit 7 - Page 1 of 1

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

**Easy Street Property Management**

5001 Tremont Ave
Davenport, IA 52807
(563) 514-4956
www.espmrentals.com



**JRG Group, LLC.- NO LONGER MANAGING EFFECTIVE 3/31/2021**

3810 66th St.
Urbandale, IA 50322

**Owner Statement**
Feb 14, 2021 - Mar 13, 2021

## Consolidated Summary (6 properties)

| | |
|---|---:|
| Beginning Balance | -605.27 |
| Cash In | 5,370.00 |
| Cash Out | -3,888.67 |
| Owner Disbursements | -591.50 |
| Ending Cash Balance | 284.56 |
| Unpaid Bills | -1,498.04 |
| Property Reserve | -1,800.00 |
| **Net Owner Funds** | **-3,013.48** |

Exhibit 8 - Page 1 of 22

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

## JRG1335 - 1335 W. 13th St., Davenport, IA 52801

### Property Cash Summary

| | |
|---|---:|
| Beginning Balance | 300.00 |
| Cash In | 800.00 |
| Cash Out | -595.32 |
| Ending Cash Balance | 504.68 |
| Unpaid Bills | -280.57 |
| Property Reserve | -300.00 |
| **Net Owner Funds** | **-75.89** |
| | |
| **Please Remit Balance Due** | **75.89** |

### Transactions

| Date | Payee / Payer | Type | Reference | Description | Cash In | Cash Out | Balance |
|---|---|---|---|---|---:|---:|---:|
| | | | | Beginning Cash Balance as of 02/14/2021 | | | 300.00 |
| 03/03/2021 | Shari Garland | Receipt | 206638 | JRG1335#1 - Section 8 Rent - housing | 644.00 | | 944.00 |
| 03/05/2021 | Shari Garland | Receipt | 40192364638805 | JRG1335#1 - Rent Income - March 2021 | 156.00 | | 1,100.00 |
| 03/09/2021 | Easy Street Property Management | Check | 353418039 | Management fees - Management fees for 03/2021 | | 72.00 | 1,028.00 |
| 03/13/2021 | Maintenance Pro Team | Check | 353418042 | Snow - Snow Removal- 1/27, 2/7, 2/14 | | 90.00 | 938.00 |
| 03/13/2021 | Maintenance Pro Team | Check | 353418042 | JRG1335#2 - Materials - Turnover materials | | 98.90 | 839.10 |
| 03/13/2021 | Maintenance Pro Team | Check | 353418042 | JRG1335#2 - Materials - Turnover materials | | 7.06 | 832.04 |
| 03/13/2021 | MidAmerican Energy | Check | 11727 | Electricity - 12/17-1/21, house account | | 49.00 | 783.04 |
| 03/13/2021 | MidAmerican Energy | Check | 11727 | Electricity - House Account 01/21 - 02/22 - 01/21 - 02/22 | | 57.59 | 725.45 |
| 03/13/2021 | MidAmerican Energy | Check | 11727 | JRG1335#1 - Electricity - Vacant 01/21 - 02/22 - 01/21 - 02/22 | | 220.77 | 504.68 |
| | | | | Ending Cash Balance | | | 504.68 |
| **Total** | | | | | **800.00** | **595.32** | |

### Bills Due

| Due Date | Payee | Description | Unpaid |
|---|---|---|---:|
| 02/26/2021 | Maintenance Pro Team | JRG1335#2 - turnover repairs, painting, remove carpet per SOW | 261,67 |
| 03/07/2021 | Maintenance Pro Team | Close windows | 18.90 |
| **Total** | | | **280.57** |

Exhibit 8 - Page 2 of 22

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

## JRG1520/1522 - 1520/1522 8th Avenue, East Moline, IL 61244

### Property Cash Summary

| | |
|---|---:|
| Beginning Balance | 300.00 |
| Cash In | 650.00 |
| Cash Out | -58.50 |
| Owner Disbursements | -591.50 |
| Ending Cash Balance | 300.00 |
| Property Reserve | -300.00 |
| **Net Owner Funds** | **0.00** |

### Transactions

| Date | Payee / Payer | Type | Reference | Description | Cash In | Cash Out | Balance |
|---|---|---|---|---|---:|---:|---:|
| | | | | Beginning Cash Balance as of 02/14/2021 | | | 300.00 |
| 03/03/2021 | Joshua J. Curtis | eCheck receipt | 3108-F4C0 | 1522 - Rent Income – March 2021 | 650.00 | | 950.00 |
| 03/09/2021 | Easy Street Property Management | Check | 63020281 | Management fees – Management fees for 03/2021 | | 58.50 | 891.50 |
| 03/13/2021 | JRG Group, LLC – NO LONGER MANAGING EFFECTIVE 3/31/2021 | ACH payment | | Owner Distribution – Owner payment for 03/2021 | | 591.50 | 300.00 |
| | | | | Ending Cash Balance | | | 300.00 |
| **Total** | | | | | **650.00** | **650.00** | |

Exhibit 8 - Page 3 of 22

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

## JRG1923 - 1923 Pershing Ave, Davenport, IA 52803

## Property Cash Summary

| | |
|---|---:|
| Beginning Balance | 25.00 |
| Cash In | 0.00 |
| Cash Out | -142.69 |
| Ending Cash Balance | -117.69 |
| Unpaid Bills | -250.00 |
| Property Reserve | -300.00 |
| **Net Owner Funds** | **-667.69** |

| | |
|---|---:|
| **Please Remit Balance Due** | **667.69** |

## Transactions

| Date | Payee / Payer | Type | Reference | Description | Cash In | Cash Out | Balance |
|---|---|---|---|---|---:|---:|---:|
| | | | | Beginning Cash Balance as of 02/14/2021 | | | 25.00 |
| 03/13/2021 | MidAmerican Energy | Check | 11727 | Electricity - 11/19 - 12/22 - 11/19 - 12/22 | | 114.77 | -89.77 |
| 03/13/2021 | MidAmerican Energy | Check | 11727 | Electricity - 12/22 - 01/27 - 12/22 - 01/27 | | 27.92 | -117.69 |
| | | | | Ending Cash Balance | | | -117.69 |
| **Total** | | | | | **0.00** | **142.69** | |

## Bills Due

| Due Date | Payee | Description | Unpaid |
|---|---|---|---:|
| 12/08/2020 | Maintenance Pro Team | dumpster | 250.00 |
| **Total** | | | **250.00** |

Exhibit 8 - Page 4 of 22

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

## JRG201 - 201 N. 20th St., East Moline, IL 61244

## Property Cash Summary

| | |
|---|---:|
| Beginning Balance | -1,074.96 |
| Cash In | 3,920.00 |
| Cash Out | -2,856.13 |
| Ending Cash Balance | -11.09 |
| Unpaid Bills | -907.47 |
| Property Reserve | -300.00 |
| **Net Owner Funds** | **-1,218.56** |
| **Please Remit Balance Due** | **1,218.56** |

## Transactions

| Date | Payee / Payer | Type | Reference | Description | Cash In | Cash Out | Balance |
|---|---|---|---|---|---:|---:|---:|
| | | | | Beginning Cash Balance as of 02/14/2021 | | | -1,074.96 |
| 02/22/2021 | MaKayla D. Chandler | Receipt | 40192320382223 | JRG201#1 - Rent Income - January 2021 | 620.00 | | -454.96 |
| 02/25/2021 | Easy Street Property Management | Check | 63020272 | Management fees - Management fees for 02/2021 | | 55.80 | -510.76 |
| 02/25/2021 | MarriaVelen Rangel Mayorga | Reverse Receipt | | JRG201#2 - Rent Income - Reversal receipt on 02/25/2021 | | 124.00 | -634.76 |
| 02/25/2021 | MarriaVelen Rangel Mayorga | Receipt | 097001 | JRG201#2 - Mgmt Held Security Deposits | 620.00 | | -14.76 |
| 02/25/2021 | MarriaVelen Rangel Mayorga | Receipt | 097001 | JRG201#2 - Rent Income - Rent Income | 620.00 | | 605.24 |
| 03/02/2021 | Easy Street Property Management | Check | 63020274 | Management fees - Management fees for 02/2021 | | 55.80 | 549.44 |
| 03/05/2021 | MarriaVelen Rangel Mayorga | Receipt | 097954 | JRG201#2 - Rent Income - March 2021 | 620.00 | | 1,169.44 |
| 03/08/2021 | MaKayla D. Chandler | Receipt | 40192364402528 | JRG201#1 - Rent Income - February 2021 | 440.00 | | 1,609.44 |
| 03/08/2021 | MaKayla D. Chandler | Receipt | 40192364402510 | JRG201#1 - Rent Income - February 2021 | 180.00 | | 1,789.44 |
| 03/08/2021 | MaKayla D. Chandler | Receipt | 40192364402510 | JRG201#1 - Rent Income - March 2021 | 620.00 | | 2,409.44 |
| 03/08/2021 | MaKayla D. Chandler | Receipt | 40192364402510 | JRG201#1 - Electricity - MidAm tenant responsibility 1/19 2/17 | 200.00 | | 2,609.44 |
| 03/09/2021 | Easy Street Property Management | Check | 63020281 | Management fees - Management fees for 03/2021 | | 55.80 | 2,553.64 |
| 03/09/2021 | Easy Street Property Management | Check | 63020281 | Management fees - Management fees for 03/2021 | | 111.60 | 2,442.04 |
| 03/09/2021 | Maintenance Pro Team | Check | 63020282 | Snow - snow removal | | 30.00 | 2,412.04 |
| 03/09/2021 | Maintenance Pro Team | Check | 63020282 | JRG201#4 - Materials - Materials for turnover | | 115.20 | 2,296.84 |
| 03/09/2021 | Maintenance Pro Team | Check | 63020282 | JRG201#4 - Floor Coverings - Flooring materials for turnover | | 385.20 | 1,911.64 |
| 03/09/2021 | Maintenance Pro Team | Check | 63020282 | JRG201#4 - General Carpentry - labor and materials for turnover repairs | | 405.12 | 1,506.52 |
| 03/09/2021 | Maintenance Pro Team | Check | 63020282 | JRG201#4 - General Carpentry - Final repairs to turnover | | 47.84 | 1,458.68 |

Exhibit 8 - Page 5 of 22

Page 5 of 8

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

| Date | Payee / Payer | Type | Reference | Description | Cash In | Cash Out | Balance |
|------|---------------|------|-----------|-------------|---------|----------|---------|
| 03/10/2021 | City of East Moline Water Department | Check | 10225 | Water – 11/18 – 12/15 – 11/18 – 12/15 | | 1,137.13 | 321.55 |
| 03/10/2021 | County Waste Systems Inc | Check | 10228 | Garbage and Recycling – 10/01 | | 70.00 | 251.55 |
| 03/10/2021 | MidAmerican Energy | Check | 10229 | JRG201#2 – Electricity – Final Bill 01/19 – 02/11 – 01/19 – 02/11 | | 262.64 | -11.09 |
| | | | | Ending Cash Balance | | | -11.09 |
| **Total** | | | | | **3,920.00** | **2,856.13** | |

## Bills Due

| Due Date | Payee | Description | Unpaid |
|----------|-------|-------------|--------|
| 01/19/2021 | MidAmerican Energy | JRG201#2 – Vacant 12/16 – 01/19 | 179.83 |
| 02/05/2021 | Easy Street Property Management | JRG201#2 – Lease Fee | 465.00 |
| 03/13/2021 | MidAmerican Energy | JRG201#2 – Final Bill 01/12 – 02/10 | 262.64 |
| **Total** | | | **907.47** |

Exhibit 8 - Page 6 of 22

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

## JRG702 - 702 S 8th St, Burlington, IA 52601

### Property Cash Summary

| | |
|---|---:|
| Beginning Balance | 300.00 |
| Cash In | 0.00 |
| Cash Out | -236.03 |
| Ending Cash Balance | 63.97 |
| Property Reserve | -300.00 |
| **Net Owner Funds** | **-236.03** |
| | |
| **Please Remit Balance Due** | **236.03** |

### Transactions

| Date | Payee / Payer | Type | Reference | Description | Cash In | Cash Out | Balance |
|---|---|---|---|---|---:|---:|---:|
| | | | | Beginning Cash Balance as of 02/14/2021 | | | 300.00 |
| 03/10/2021 | Alliant Energy | Check | 11717 | Electricity - 01/17 - 02/16 - 01/17 - 02/16 | | 236.03 | 63.97 |
| | | | | Ending Cash Balance | | | 63.97 |
| **Total** | | | | | **0.00** | **236.03** | |

Exhibit 8 - Page 7 of 22

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

## JRG915 - 915 Wells St, Burlington, IA 52601

## Property Cash Summary

| | |
|---|---|
| Beginning Balance | -455.31 |
| Cash In | 0.00 |
| Cash Out | 0.00 |
| Ending Cash Balance | -455.31 |
| Unpaid Bills | -60.00 |
| Property Reserve | -300.00 |
| **Net Owner Funds** | **-815.31** |

| | |
|---|---|
| **Please Remit Balance Due** | **815.31** |

## Transactions

| Date | Payee / Payer | Type | Reference | Description | Cash In | Cash Out | Balance |
|---|---|---|---|---|---|---|---|
| | | | | Beginning Cash Balance as of 02/14/2021 | | | -455.31 |
| **Total** | | | | | **0.00** | **0.00** | |

## Bills Due

| Due Date | Payee | Description | Unpaid |
|---|---|---|---|
| 03/07/2021 | Maintenance Pro Team | snow removal | 60.00 |
| **Total** | | | **60.00** |

Exhibit 8 - Page 8 of 22

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

**Rent Roll**

**Properties:** JRG1335 - 1335 W. 13th St. Davenport, IA 52801

**Units:** Active

**As of:** 03/13/2021

| Unit | Tags | BD/BA | Tenant | Status | Sq. Ft. | Market Rent | Rent | Deposit | Lease From | Lease To | Move-in | Move-out | Past Due | NSF Count | Late Count |
|------|------|-------|--------|--------|---------|-------------|------|---------|------------|----------|---------|----------|----------|-----------|------------|
| **JRG1335 - 1335 W. 13th St, Davenport, IA 52801** | | | | | | | | | | | | | | | |
| JRG1335#1 | | 2/1.00 | Shari Garland | Current | 1,000 | 800.00 | 800.00 | 1,200.00 | 09/01/2019 | 08/31/2021 | 08/13/2018 | | 40.67 | 0 | 5 |
| JRG1335#2 | Do Not List - Owner Selling | 3/1.00 | | Vacant-Unrented | | 800.00 | | 0.00 | | | | | | | |
| **2 Units** | | | | **50.0% Occupied** | 1,000 | 1,600.00 | 800.00 | 1,200.00 | | | | | 40.67 | 0 | 5 |
| **Total 2 Units** | | | | **50.0% Occupied** | 1,000 | 1,600.00 | 800.00 | 1,200.00 | | | | | 40.67 | 0 | 5 |

Exhibit 8 - Page 9 of 22

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

**Cash Flow**

**Easy Street Property Management**

**Properties:** JRG1335 - 1335 W. 13th St. Davenport, IA 52801

**Owned By:** JRG Group, LLC.- NO LONGER MANAGING EFFECTIVE 3/31/2021

**Date Range:** 02/14/2021 to 03/13/2021

**Level of Detail:** Detail View

| Account Name | Selected Period | % of Selected Period | Fiscal Year To Date | % of Fiscal Year To Date |
|---|---|---|---|---|
| **Operating Income & Expense** | | | | |
| **Income** | | | | |
| **RENTS** | | | | |
| Rent Income | 156.00 | 19.50 | 468.00 | 19.50 |
| Section 8 Rent | 644.00 | 80.50 | 1,932.00 | 80.50 |
| **Total RENTS** | **800.00** | **100.00** | **2,400.00** | **100.00** |
| **Total Operating Income** | **800.00** | **100.00** | **2,400.00** | **100.00** |
| **Expense** | | | | |
| **MANAGEMENT FEES** | | | | |
| Management fees | 72.00 | 9.00 | 216.00 | 9.00 |
| **Total MANAGEMENT FEES** | **72.00** | **9.00** | **216.00** | **9.00** |
| **UTILITIES** | | | | |
| Electricity | 327.36 | 40.92 | 327.36 | 13.64 |
| **Total UTILITIES** | **327.36** | **40.92** | **327.36** | **13.64** |
| **MAINTENANCE** | | | | |
| **Turnover** | | | | |
| Materials | 105.96 | 13.25 | 105.96 | 4.42 |
| General Carpentry | 0.00 | 0.00 | 343.36 | 14.31 |
| **Total Turnover** | **105.96** | **13.25** | **449.32** | **18.72** |
| **Work Order** | | | | |
| Electrical | 0.00 | 0.00 | 108.23 | 4.51 |
| Appliances | 0.00 | 0.00 | 12.47 | 0.52 |
| **Total Work Order** | **0.00** | **0.00** | **120.70** | **5.03** |
| **Landscaping** | | | | |
| Snow | 90.00 | 11.25 | 160.00 | 6.67 |
| **Total Landscaping** | **90.00** | **11.25** | **160.00** | **6.67** |
| **Total MAINTENANCE** | **195.96** | **24.50** | **730.02** | **30.42** |
| **Total Operating Expense** | **595.32** | **74.42** | **1,273.38** | **53.06** |
| | | | | |
| **NOI - Net Operating Income** | **204.68** | **25.59** | **1,126.62** | **46.94** |
| | | | | |
| Total Income | 800.00 | 100.00 | 2,400.00 | 100.00 |
| Total Expense | 595.32 | 74.42 | 1,273.38 | 53.06 |
| | | | | |
| **Net Income** | **204.68** | **25.59** | **1,126.62** | **46.94** |
| | | | | |
| **Other Items** | | | | |
| Owner Distribution | 0.00 | | -895.79 | |
| **Net Other Items** | **0.00** | | **-895.79** | |

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

**Cash Flow**

| Account Name | Selected Period | % of Selected Period | Fiscal Year To Date | % of Fiscal Year To Date |
|---|---|---|---|---|
| | | | | |
| **Cash Flow** | 204.68 | | 230.83 | |
| | | | | |
| **Beginning Cash** | 340.00 | | 313.85 | |
| **Beginning Cash + Cash Flow** | 544.68 | | 544.68 | |
| **Actual Ending Cash** | 544.68 | | 544.68 | |

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

**Rent Roll**

**Properties:** JRG1520/1522 - 1520/1522 8th Avenue East Moline, IL 61244

**Units:** Active

**As of:** 03/13/2021

| Unit | Tags | BD/BA | Tenant | Status | Sq. Ft. | Market Rent | Rent | Deposit | Lease From | Lease To | Move-in | Move-out | Past Due | NSF Count | Late Count |
|------|------|-------|--------|--------|---------|-------------|------|---------|------------|----------|---------|----------|----------|-----------|------------|
| **JRG1520/1522 - 1520/1522 8th Avenue East Moline, IL 61244** | | | | | | | | | | | | | | | |
| 1520 | Empty Lot next door is included in the mowing | 2/1.00 | Freddie B. Baker II | Current | | 650.00 | 650.00 | 975.00 | 12/10/2018 | 12/31/2021 | 12/10/2018 | | 10,524.88 | 0 | 26 |
| 1522 | Empty Lot next door is included in the mowing | 2/1.50 | Joshua J. Curtis | Current | | 650.00 | 650.00 | 650.00 | 11/23/2019 | 11/22/2021 | 11/23/2019 | | 0.00 | 0 | 6 |
| **2 Units** | | | | **100.0% Occupied** | 0 | 1,300.00 | 1,300.00 | 1,625.00 | | | | | 10,524.88 | 0 | 32 |
| **Total 2 Units** | | | | **100.0% Occupied** | 0 | 1,300.00 | 1,300.00 | 1,625.00 | | | | | 10,524.88 | 0 | 32 |

**Cash Flow**       E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

**Easy Street Property Management**

**Properties:** JRG1520/1522 - 1520/1522 8th Avenue East Moline, IL 61244

**Owned By:** JRG Group, LLC.- NO LONGER MANAGING EFFECTIVE 3/31/2021

**Date Range:** 02/14/2021 to 03/13/2021

**Level of Detail:** Detail View

| Account Name | Selected Period | % of Selected Period | Fiscal Year To Date | % of Fiscal Year To Date |
|---|---|---|---|---|
| **Operating Income & Expense** | | | | |
| **Income** | | | | |
| **RENTS** | | | | |
| Rent Income | 650.00 | 100.00 | 1,950.00 | 100.00 |
| **Total RENTS** | **650.00** | **100.00** | **1,950.00** | **100.00** |
| **Total Operating Income** | **650.00** | **100.00** | **1,950.00** | **100.00** |
| **Expense** | | | | |
| **MANAGEMENT FEES** | | | | |
| Management fees | 58.50 | 9.00 | 175.50 | 9.00 |
| **Total MANAGEMENT FEES** | **58.50** | **9.00** | **175.50** | **9.00** |
| **MAINTENANCE** | | | | |
| **Work Order** | | | | |
| Materials | 0.00 | 0.00 | 68.64 | 3.52 |
| General Carpentry | 0.00 | 0.00 | 29.17 | 1.50 |
| **Total Work Order** | **0.00** | **0.00** | **97.81** | **5.02** |
| **Landscaping** | | | | |
| Snow | 0.00 | 0.00 | 223.27 | 11.45 |
| **Total Landscaping** | **0.00** | **0.00** | **223.27** | **11.45** |
| **Total MAINTENANCE** | **0.00** | **0.00** | **321.08** | **16.47** |
| **Total Operating Expense** | **58.50** | **9.00** | **496.58** | **25.47** |
| | | | | |
| **NOI - Net Operating Income** | **591.50** | **91.00** | **1,453.42** | **74.53** |
| | | | | |
| Total Income | 650.00 | 100.00 | 1,950.00 | 100.00 |
| Total Expense | 58.50 | 9.00 | 496.58 | 25.47 |
| | | | | |
| **Net Income** | **591.50** | **91.00** | **1,453.42** | **74.53** |
| | | | | |
| **Other Items** | | | | |
| Owner Distribution | -591.50 | | -1,453.42 | |
| **Net Other Items** | **-591.50** | | **-1,453.42** | |
| | | | | |
| **Cash Flow** | **0.00** | | **0.00** | |
| | | | | |
| **Beginning Cash** | **330.00** | | **330.00** | |
| **Beginning Cash + Cash Flow** | **330.00** | | **330.00** | |
| **Actual Ending Cash** | **330.00** | | **330.00** | |

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

**Rent Roll**

**Properties:** JRG1923 - 1923 Pershing Ave Davenport, IA 52803

**Units:** Active

**As of:** 03/13/2021

| Unit | Tags | BD/BA | Tenant | Status | Sq. Ft. | Market Rent | Rent | Deposit | Lease From | Lease To | Move-in | Move-out | Past Due | NSF Count | Late Count |
|------|------|-------|--------|--------|---------|-------------|------|---------|------------|----------|---------|----------|----------|-----------|------------|
| **JRG1923 - 1923 Pershing Ave Davenport, IA 52803** | | | | | | | | | | | | | | | |
| | Winterized 2019 | 4/1.50 | | Vacant-Unrented | 2,161 | 1,175.00 | | 0.00 | | | | | | | |
| **Total 1 Unit** | | | | **0.0% Occupied** | **2,161** | **1,175.00** | **0.00** | **0.00** | | | | | **0.00** | **0** | **0** |

Exhibit 8 - Page 14 of 22

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

**Cash Flow**

**Easy Street Property Management**

**Properties:** JRG1923 - 1923 Pershing Ave Davenport, IA 52803

**Owned By:** JRG Group, LLC.- NO LONGER MANAGING EFFECTIVE 3/31/2021

**Date Range:** 02/14/2021 to 03/13/2021

**Level of Detail:** Detail View

| Account Name | Selected Period | % of Selected Period | Fiscal Year To Date | % of Fiscal Year To Date |
|---|---|---|---|---|
| **Operating Income & Expense** | | | | |
| **Income** | | | | |
| **Total Operating Income** | 0.00 | 0.00 | 0.00 | 0.00 |
| **Expense** | | | | |
| **UTILITIES** | | | | |
| Electricity | 142.69 | 0.00 | 142.69 | 0.00 |
| **Total UTILITIES** | 142.69 | 0.00 | 142.69 | 0.00 |
| **MAINTENANCE** | | | | |
| **Turnover** | | | | |
| General Carpentry | 0.00 | 0.00 | 55.00 | 0.00 |
| **Total Turnover** | 0.00 | 0.00 | 55.00 | 0.00 |
| **Landscaping** | | | | |
| Snow | 0.00 | 0.00 | 20.00 | 0.00 |
| **Total Landscaping** | 0.00 | 0.00 | 20.00 | 0.00 |
| **Total MAINTENANCE** | 0.00 | 0.00 | 75.00 | 0.00 |
| **Total Operating Expense** | 142.69 | 0.00 | 217.69 | 0.00 |
| | | | | |
| **NOI - Net Operating Income** | -142.69 | 0.00 | -217.69 | 0.00 |
| | | | | |
| Total Income | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Expense | 142.69 | 0.00 | 217.69 | 0.00 |
| | | | | |
| **Net Income** | -142.69 | 0.00 | -217.69 | 0.00 |
| | | | | |
| **Cash Flow** | -142.69 | | -217.69 | |
| | | | | |
| **Beginning Cash** | 25.00 | | 100.00 | |
| **Beginning Cash + Cash Flow** | -117.69 | | -117.69 | |
| **Actual Ending Cash** | -117.69 | | -117.69 | |

Exhibit 8 - Page 15 of 22

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

**Rent Roll**

**Properties:** JRG201 - 201 N. 20th St. East Moline, IL 61244

**Units:** Active

**As of:** 03/13/2021

| Unit | Tags | BD/BA | Tenant | Status | Sq. Ft. | Market Rent | Rent | Deposit | Lease From | Lease To | Move-in | Move-out | Past Due | NSF Count | Late Count |
|------|------|-------|--------|--------|---------|-------------|------|---------|------------|----------|---------|----------|----------|-----------|------------|
| **JRG201 - 201 N. 20th St. East Moline, IL 61244** | | | | | | | | | | | | | | | |
| JRG201#1 | | 2/1.00 | MaKayla D. Chandler | Current | | 620.00 | 620.00 | 620.00 | 12/01/ 2020 | 11/30/ 2021 | 12/01/ 2020 | | 680.90 | 0 | 3 |
| JRG201#2 | | 2/1.00 | MarriaVelen Rangel Mayorga | Current | | 620.00 | 620.00 | 620.00 | 02/05/ 2021 | 01/31/ 2022 | 02/05/ 2021 | | 0.00 | 0 | 1 |
| JRG201#3 | | 1/1.00 | Kiana A. Clark | Current | | 550.00 | 550.00 | 550.00 | 05/23/ 2019 | 05/31/ 2021 | 05/23/ 2019 | | 4,510.00 | 0 | 14 |
| JRG201#4 | | 2/1.00 | | Vacant- Unrented | | 600.00 | | 0.00 | | | | | | | |
| **4 Units** | | | | **75.0% Occupied** | **0** | **2,390.00** | **1,790.00** | **1,790.00** | | | | | **5,190.90** | **0** | **18** |
| **Total 4 Units** | | | | **75.0% Occupied** | **0** | **2,390.00** | **1,790.00** | **1,790.00** | | | | | **5,190.90** | **0** | **18** |

**Cash Flow**

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

**Easy Street Property Management**

**Properties:** JRG201 **-** 201 N. 20th St. East Moline, IL 61244

**Owned By:** JRG Group, LLC.**-** NO LONGER MANAGING EFFECTIVE 3/31/2021

**Date Range:** 02/14/2021 to 03/13/2021

**Level of Detail:** Detail View

| Account Name | Selected Period | % of Selected Period | Fiscal Year To Date | % of Fiscal Year To Date |
|---|---:|---:|---:|---:|
| **Operating Income & Expense** | | | | |
| **Income** | | | | |
| **RENTS** | | | | |
| Rent Income | 2,976.00 | 100.00 | 3,100.00 | 100.00 |
| **Total RENTS** | **2,976.00** | **100.00** | **3,100.00** | **100.00** |
| **Total Operating Income** | **2,976.00** | **100.00** | **3,100.00** | **100.00** |
| **Expense** | | | | |
| **MANAGEMENT FEES** | | | | |
| Management fees | 279.00 | 9.38 | 279.00 | 9.00 |
| **Total MANAGEMENT FEES** | **279.00** | **9.38** | **279.00** | **9.00** |
| **UTILITIES** | | | | |
| Electricity | 62.64 | 2.10 | 62.64 | 2.02 |
| Water | 1,137.13 | 38.21 | 1,137.13 | 36.68 |
| Garbage and Recycling | 70.00 | 2.35 | 70.00 | 2.26 |
| **Total UTILITIES** | **1,269.77** | **42.67** | **1,269.77** | **40.96** |
| **MAINTENANCE** | | | | |
| **Turnover** | | | | |
| Materials | 115.20 | 3.87 | 115.20 | 3.72 |
| General Carpentry | 452.96 | 15.22 | 452.96 | 14.61 |
| Floor Coverings | 385.20 | 12.94 | 385.20 | 12.43 |
| **Total Turnover** | **953.36** | **32.03** | **953.36** | **30.75** |
| **Landscaping** | | | | |
| Snow | 30.00 | 1.01 | 70.00 | 2.26 |
| **Total Landscaping** | **30.00** | **1.01** | **70.00** | **2.26** |
| **Total MAINTENANCE** | **983.36** | **33.04** | **1,023.36** | **33.01** |
| **Total Operating Expense** | **2,532.13** | **85.09** | **2,572.13** | **82.97** |
| | | | | |
| **NOI - Net Operating Income** | **443.87** | **14.91** | **527.87** | **17.03** |
| | | | | |
| Total Income | 2,976.00 | 100.00 | 3,100.00 | 100.00 |
| Total Expense | 2,532.13 | 85.09 | 2,572.13 | 82.97 |
| | | | | |
| **Net Income** | **443.87** | **14.91** | **527.87** | **17.03** |
| | | | | |
| **Other Items** | | | | |
| Prepaid Rent | 124.00 | | 0.00 | |
| **Net Other Items** | **124.00** | | **0.00** | |

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

**Cash Flow**

| Account Name | Selected Period | % of Selected Period | Fiscal Year To Date | % of Fiscal Year To Date |
|---|---|---|---|---|
| | | | | |
| **Cash Flow** | 567.87 | | 527.87 | |
| | | | | |
| **Beginning Cash** | -1,398.96 | | -1,358.96 | |
| **Beginning Cash + Cash Flow** | -831.09 | | -831.09 | |
| **Actual Ending Cash** | -211.09 | | -211.09 | |

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

**Rent Roll**

**Properties:** JRG702 - 702 S 8th St Burlington, IA 52601

**Units:** Active

**As of:** 03/13/2021

| Unit | Tags | BD/BA | Tenant | Status | Sq. Ft. | Market Rent | Rent | Deposit | Lease From | Lease To | Move-in | Move-out | Past Due | NSF Count | Late Count |
|------|------|-------|--------|--------|---------|-------------|------|---------|------------|----------|---------|----------|----------|-----------|------------|
| **JRG702 - 702 S 8th St Burlington, IA 52601** | | | | | | | | | | | | | | | |
| | | 4/1.00 | | Vacant-Unrented | 1,518 | 750.00 | | 0.00 | | | | | | | |
| **Total 1 Unit** | | | | **0.0% Occupied** | **1,518** | **750.00** | **0.00** | **0.00** | | | | | **0.00** | **0** | **0** |

Exhibit 8 - Page 19 of 22

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

**Cash Flow**

**Easy Street Property Management**

**Properties:** JRG702 - 702 S 8th St Burlington, IA 52601

**Owned By:** JRG Group, LLC.- NO LONGER MANAGING EFFECTIVE 3/31/2021

**Date Range:** 02/14/2021 to 03/13/2021

**Level of Detail:** Detail View

| Account Name | Selected Period | % of Selected Period | Fiscal Year To Date | % of Fiscal Year To Date |
|---|---|---|---|---|
| **Operating Income & Expense** | | | | |
| Income | | | | |
| **Total Operating Income** | 0.00 | 0.00 | 0.00 | 0.00 |
| Expense | | | | |
| UTILITIES | | | | |
| Electricity | 236.03 | 0.00 | 236.03 | 0.00 |
| **Total UTILITIES** | 236.03 | 0.00 | 236.03 | 0.00 |
| **Total Operating Expense** | 236.03 | 0.00 | 236.03 | 0.00 |
| | | | | |
| **NOI - Net Operating Income** | -236.03 | 0.00 | -236.03 | 0.00 |
| | | | | |
| Total Income | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Expense | 236.03 | 0.00 | 236.03 | 0.00 |
| | | | | |
| **Net Income** | -236.03 | 0.00 | -236.03 | 0.00 |
| | | | | |
| **Cash Flow** | -236.03 | | -236.03 | |
| | | | | |
| **Beginning Cash** | 300.00 | | 300.00 | |
| **Beginning Cash + Cash Flow** | 63.97 | | 63.97 | |
| **Actual Ending Cash** | 63.97 | | 63.97 | |

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

**Rent Roll**

**Properties:** JRG915 **-** 915 Wells St Burlington, IA 52601

**Units:** Active

**As of:** 03/13/2021

| Unit | Tags | BD/BA | Tenant | Status | Sq. Ft. | Market Rent | Rent | Deposit | Lease From | Lease To | Move-in | Move-out | Past Due | NSF Count | Late Count |
|------|------|-------|--------|--------|---------|-------------|------|---------|------------|----------|---------|----------|----------|-----------|------------|
| | | | | | | | | | No data to display | | | | | | |
| **Total 0 Units** | | | | | 0 | 0.00 | 0.00 | 0.00 | | | | | 0.00 | 0 | 0 |

Exhibit 8 - Page 21 of 22

**Cash Flow**

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

**Easy Street Property Management**

**Properties:** JRG915 - 915 Wells St Burlington, IA 52601

**Owned By:** JRG Group, LLC.- NO LONGER MANAGING EFFECTIVE 3/31/2021

**Date Range:** 02/14/2021 to 03/13/2021

**Level of Detail:** Detail View

| Account Name | Selected Period | % of Selected Period | Fiscal Year To Date | % of Fiscal Year To Date |
|---|---|---|---|---|
| **Operating Income & Expense** | | | | |
| Income | | | | |
| **Total Operating Income** | 0.00 | 0.00 | 0.00 | 0.00 |
| Expense | | | | |
| **Total Operating Expense** | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | |
| **NOI - Net Operating Income** | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | |
| Total Income | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Expense | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | |
| **Net Income** | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | |
| **Cash Flow** | 0.00 | | 0.00 | |
| | | | | |
| **Beginning Cash** | -455.31 | | -455.31 | |
| **Beginning Cash + Cash Flow** | -455.31 | | -455.31 | |
| **Actual Ending Cash** | -455.31 | | -455.31 | |

Exhibit 8 - Page 22 of 22

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT



DANIEL P. KRESOWIK
ATTORNEY

T: 515-274-1450
F: 515-274-1488
dan.kresowik@brickgentrylaw.com

BRICK GENTRY P.C.

ATTORNEYS & COUNSELORS at Law

March 25, 2021

**<u>VIA CERTIFIED FIRST CLASS MAIL AND EMAIL</u>**

Easy Street Property Management, LLC          Easy Street Property Management, LLC
Attn: Ms. Trina Hanssen                                     Attn: Mr. Matt Larson
5001 Tremont Avenue                                        5001 Tremont Avenue
Davenport, IA 52807                                          Davenport, IA 52807
thanssen@easystreetprops.com                        qcprops@gmail.com

Dear Ms. Hanssen and Mr. Larson:

**RE:     DEMAND FOR MEDIATION AND LITIGATION HOLD DEMAND**

We represent JRG Group, LLC ("JRG") and its principals.  As you are aware, JRG entered into an Agreement - To Manage Real Estate ("Agreement") with Easy Street Property Management, LLC ("Easy Street") as of March 28, 2019.  As you are also aware, on February 25, 2021, JRG provided Easy Street with notice of termination of this Agreement for the following properties:

1923 Pershing Street, Davenport, Iowa 52803          201 N. 20th Street #1, East Moline, IL 61244
1335 W. 13th Street #1, Davenport, Iowa 52801       201 N. 20th Street #2, East Moline, IL 61244
1335 W. 13st Street #2, Davenport, Iowa 52801       201 N. 20th Street #3, East Moline, IL 61244
702 S 8th Street, Burlington, IA 52601                      201 N. 20th Street #4, East Moline, IL 61244
1520 8th Avenue, East Moline, IL 61244                    915 Wells Street, Burlington, IA 52601
1522 8th Avenue, East Moline, IL 61244

(collectively, the "Properties").  Finally, on or about March 13, 2021, Easy Street provided JRG with an "Owner Statement" alleging that JRG owes East Street the sum of $3,013.48.

JRG disputes that is owes Easy Street either this amount, or any other amount.  To the contrary, Easy Street breached the Agreement in multiple respects.  Pursuant to paragraph 9 of the Agreement, JRG hereby demands that Easy Street engage in mediation of this dispute.  Please contact me no later than **<u>April 5, 2021</u>**, to discuss potential mediators.  If we do not hear from you on or before April 5, 2021, we will understand that you are refusing to engage in mediation.

As you are also aware, JRG and/or its principals have entered into various other dealings and contracts with one or both of you and/or entities in which one or both of you apparently are involved or hold an interest.  In addition to seeking relief under the Agreement, JRG and/or its

*-1-*

*Brick, Gentry, Bowers, Swartz & Levis, P.C.*

6701 Westown Parkway, Suite 100 ◆ West Des Moines, Iowa 50266 ◆ T: 515-274-1450 ◆ F: 515-274-1488 ◆ www.brickgentrylaw.com

Exhibit 9 - Page 1 of 3

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

principals, as applicable, also intend to seek relief against each of you, individually, and/or any related entities with whom they have, or had contracts or other dealings, as applicable.

Due to the probability of the same being requested for production during the course of the litigation, our clients hereby demand that each of you, individually, Easy Street, and all other entities in which you have involvement or hold any interest which have had contracts or dealings with our clients, immediately take all necessary measures to identify, preserve and safeguard all documents and communications, including but not limited to hard copy documents, recorded, and electronically stored information ("ESI") in your possession or control (including, but not limited to text messages, social media messages, instant messages, emails, and notes, regardless of whether such communications are through "official" JRG or other entity channels, or whether they are on, or were sent from your personal communications devices or personal email or phone accounts") (collectively, "Documentation"), that meet any of the following criteria:

1. All Documentation relating to, referencing, constituting, or evidencing communications with our clients;
2. All Documentation relating to, referencing, constituting, or evidencing communications with third parties regarding our clients;
3. All Documentation relating to, referencing, constituting, or evidencing contracts with our clients;
4. All Documentation referencing or relating to, referencing, or evidencing services you performed on behalf of our clients;
5. All Documentation referencing or relating to, referencing, or evidencing materials you provided on behalf of our clients;
6. All Documentation referencing or relating to, referencing, or evidencing services you retained a third party to perform on behalf of our clients; and
7. All Documentation referencing or relating to, referencing, or evidencing materials you retained a third party to provide on behalf of our clients.

Our clients consider the ESI, in addition to hard copy Documentation, to be valuable and an irreplaceable source of discoverable information in this matter.  Please be advised that you may have additional sources or types of ESI of which we are not aware of at this time, and your obligation to identify and preserve ESI extends to those sources and types of ESI.  You should also immediately suspend any regular or periodic data purge or destruction that may affect the above ESI.  Any material ESI that has been deleted should be recovered if at all possible.  A file backup copy of ESI is not adequate preservation unless it is a true mirror image of all used and unused data space on the hardware. The ESI must be preserved in its native format with all metadata of any kind whatsoever remaining intact without alteration. The obligation extends to all active data, archived data, deleted data, and legacy data.

The obligation to preserve ESI also extends to ESI that is reasonably in your control, or subject to your care, control, or possession, such as separate email and text message accounts of employees (the term "employee" includes you as well as persons working for you or on your behalf, and/or any entity owned or controlled, in whole or in part, by you, as independent contractors), members, managers, and/or owners, social media and third-party computing platforms, employee smartphones and other employee devices on which they have created material ESI; such third parties should be immediately notified to preserve the ESI in their possession.

-2-

*Brick, Gentry, Bowers, Swartz & Levis, P.C.*

6701 Westown Parkway, Suite 100 ♦ West Des Moines, Iowa 50266 ♦ T: 515-274-1450 ♦ F: 515-274-1488 ♦ www.brickgentrylaw.com

Exhibit 9 - Page 2 of 3

"Updating" or otherwise altering social media and other web-based activity must be immediately suspended until a true mirror image of the ESI in its current form can be obtained.  These obligations are ongoing through the duration of the case.

We recommend you immediately consult legal counsel of your choosing with respect to these matters.  Please have your legal counsel contact us at their earliest convenience.  Take notice and govern yourselves accordingly.

Sincerely,

BRICK GENTRY P.C.

By_____
          Daniel P. Kresowik

DPK/cjh

-3-
*Brick, Gentry, Bowers, Swartz & Levis, P.C.*
6701 Westown Parkway, Suite 100 ♦ West Des Moines, Iowa 50266 ♦ T: 515-274-1450 ♦ F: 515-274-1488 ♦ www.brickgentrylaw.com

Exhibit 9 - Page 3 of 3

DocuSign Envelope ID: 0EC5752E2245-455C-A212-E2EDCB350DF6
E-FILED 2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

# __Real Estate Purchase Agreement__

This agreement is made on the _____28th___ day of ___February_____ , 20 _18___

Between Seller(s)___QC Rental Props LLC_____and

Buyer(s)_____JRG Group LLC_____and/or assignees.

Seller agrees to sell and buyer agrees to buy the following described real property together with all improvements and fixtures and the personal property described below:

**Street Address:** __915 Wells St., Burlington IA 52601_____

**Legal Description:** _____

_____

**Personal property included:** _____

**Purchase Price:** __$70,000.00_____

**Earnest Money Deposit:** _$1000.00_____ __will send to escrow upon agreement.__

**Total Due at Close:** __$69,000.00_____

1. __Earnest Money:__ The amount indicated above has been deposited by the Purchaser into an escrow account with the Seller's attorney, mortgage lender, or agent acting as an escrow agent. Earnest money is refundable in the event that the Seller cancels the transaction due to no fault of the buyer. If the buyer fails to perform, the earnest money will be forfeited to the Seller.

2. __Proration's, Impounds, and Security Deposits:__ The following items shall be prorated at closing:
   a. Real Estate Taxes, based on the most recent tax information available;
   b. Rents, if any (with full transfer of security/damage deposits);
   c. Interest on assumed debt, if any;
   d. Insurance premiums if policy assigned to Buyer; and
   e. Other income and operation expense, if any.

3. __Assessments:__ Special assessments for improvements, which are lien or claim against the property as of the date of closing, shall be paid by Seller. Seller warrants that prior to execution of this agreement that Seller has no knowledge of and has not received from

Page 1 of 4
B: _____ S: _____

Exhibit 1 - Page 1 of 4

DocuSign Envelope ID: 0EC57526224E4F5FBA313F38DCB358DF6

E-FILED 2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

any municipal authority concerning assessments or improvements which could result in a special assessment on the property to be sold herein.

4. **Expenses of Transfer:** Seller shall pay Seller's Broker's commission, if any; Cost of Seller's abstracting or owner's title insurance policy; and all revenue stamps and recording of any releases. Purchaser shall pay Purchaser's Broker's commission, if any; Recording fee for deed and mortgage, and cost of purchaser's abstracting for mortgage title insurance policy as required by lender. Each party shall be responsible for their own party's attorney fees and customary closing costs, unless otherwise noted in the Additional Terms section on the last page of this agreement.

5. **Fixtures and Personal Property:** All fixtures presently installed on the premises, including but not limited to: window shades, all attached carpeting, existing storm and screen windows and doors, all attached cooling, heating, plumbing and electrical systems, sump pumps, ceiling fans, water softeners, and garage door openers and all remote unites shall be left by the Seller in or upon the premises exactly as they are on the date of this agreement.

6. **Inspections:** Buyer has an inspection period of __na__ days to complete inspections and __na__ days after inspection period ends to report to Seller(s) dissatisfaction with the property.
    a. Wood infestation Report: Paid by: Seller __na__ Buyer _na_ (initial one)
    b. Whole House Inspection: Paid by: Seller __na__ Buyer _na_ (initial one)

7. **Condition of Premises:** The parties agree that the purchase price reflects the condition of the property and the buyer acknowledges that they have/will inspect the property and the improvements thereof, and accepts under one of the following terms:
    **a.** "AS IS" Condition, or
    **b.** Warranty in this Agreement as followed: _____

8. **Closing Date and Transfer of Title**: This transaction shall close on or around the

    __3rd_ Day of _April_____, 20_18__ .

    Closing will be held at: Abstract Title and Escrow Services of Iowa
    321 N. 3rd St., 2nd Floor, Burlington, IA 52601

Seller agrees to transfer marketable title free and clear of all encumbrances. Seller shall transfer title by warranty deed.

For property located in Illinois: Within a reasonable time prior to closing and at Seller's expense, Seller agrees to furnish a title insurance commitment in the amount of the purchase price, proposing to insure fee simple title in Buyer with no encumbrances. In the event that the title commitment contains any objectionable matter, the buyer shall notify seller thereof and seller shall cure said objectionable matter not later than the date of closing. In the event Seller is unwilling or unable to cure said objectionable matter, Buyer

Page 2 of 4
B: _____ S: 

Exhibit 1 - Page 2 of 4

may terminate this transaction and the earnest money shall be refunded to Buyer. After closing, the Seller shall cause the final title policy to be delivered to Buyer's attorney.

For property located in Iowa: Within a reasonable time prior to closing and at Seller's expense, Seller shall deliver to Purchaser a merchantable Abstract of Title showing merchantable title of record to the real estate in Seller and certified to a current date by an abstractor regularly doing business in the county where the real estate is located. If title evidence contains any objectionable matter, Buyer shall notify Seller thereof and Seller shall cure said objectionable mater not later than the date of closing. In the event Seller is unwilling or unable to cure said objectionable matter, Buyer may terminate this transaction and the earnest money shall be refunded to Buyer.

9. **Escrow:** This agreement will be closed through an escrow with the Seller's attorney, mortgage lender, or agent acting as an escrow agent, in accordance with the general custom of the community and in conformity with this agreement. The funds held in escrow shall be paid out upon recording of the necessary documents and the vesting of merchantable title in the buyer.

10. **Damage to Property:** Seller shall maintain property in its current condition upon the signing of this contract until closing occurs.

11. **Default:** If Buyer defaults under this contract, all monies deposited by Buyer shall be retained by the Seller and the Seller may choose to pursue all remedies allowed by law. In the event of default, the defaulting party shall be liable to the other party for reasonable attorney fees and expenses incurred by reason of the default.  If this contract is assigned, seller agrees to hold harmless the original buyer (assignor). If the contract is assigned, seller must pursue indemnification from the assignee.

12. **Investor Purchase:** Buyer acknowledges that seller is a real estate investor and that this property and this transaction may be incorporated into one or more series of multiple transactions that require simultaneous closings or near-simultaneous closings. As such, Buyer hereby acknowledges that the closing date set forth in Paragraph 5 herein above is an estimated closing date and that closing may take place before or after said date listed above.

DocuSign Envelope ID: 0EC575262245-4F5E-A312-F36DCB850DF6

**ADDITIONAL TERMS:**

Purchase Price Includes Rehab Costs (Scope Attached) and $1000 Utility Escrow Payment.

 Purchaser agrees to pay all of the Seller's closing costs.

**Legal Assistance:** The Seller(s) and Buyer(s) are aware that when fully signed, this is a legally binding agreement for the sale and purchase of real estate and that in order to protect their interest in connection with contractual, title, and other aspects of this transaction, they have the right to consult legal counsel before this agreement is signed.

**Seller:**

_____     Date: __February 28, 2018_____

_____     Date: _____

**Buyer:**

_____     Date: 3/1/2018_____

_____     Date: _____

Page 4 of 4
B: _____  S: _____

Exhibit 1 - Page 4 of 4

THE IOWA STATE BAR ASSOCIATION
Official Form No. 155

FOR THE LEGAL EFFECT OF THE USE OF
THIS FORM, CONSULT YOUR LAWYER



# RESIDENTIAL PROPERTY SELLER
# DISCLOSURE STATEMENT

Property Address:     915 Wells st Burlington IA

**PURPOSE:**

    Use this statement to disclose information as required by Iowa Code chapter 558A. This law requires certain sellers of residential property that includes at least one and no more than four dwelling units to disclose information about the property to be sold. The following disclosures are made by the Seller(s) and not by any agent acting on behalf of the Seller(s).

**INSTRUCTIONS TO SELLER(S):**

A.     Seller(s) must complete this statement. Respond to all questions, or attach reports allowed by Iowa Code section 558A.4(2);

B.     Disclose all known conditions materially affecting this property;

C.     If an item does not apply to this property, indicate it is not applicable (N/A);

D.     Disclose information in good faith and make a reasonable effort to ascertain the required information. If the required information is unknown or is unavailable following a reasonable effort, use an approximation of the information, or indicate that the information is unknown (UNK). All approximations must be identified as approximations (AP).

E.     Additional pages may be attached as needed:

F.     Keep a copy of this statement with your other important papers.

**DISCLOSURES:**

Circle response:

| | | | | |
|---|---|---|---|---|
| 1. Basement/Foundation: Any known water or other problems? | Yes | **No** | N/A | UNK |
| Any known repairs? | Yes | **No** | N/A | UNK |
| If yes, date of repairs/replacement: _____ | | | | |
| 2. Roof: Any known problems? | Yes | **No** | N/A | UNK |
| Any known repairs? | Yes | **No** | N/A | UNK |
| If yes, date of repairs/replacement: _____ | | | | |
| 3. Well and Pump: Any known problems? | Yes | **No** | N/A | UNK |
| Any known repairs? | Yes | **No** | N/A | UNK |
| If yes, date of repairs/replacement: _____ | | | | |
| Any known water tests? | Yes | **No** | N/A | UNK |
| If yes, date of last report: _____ | | | | |
| and results: _____ | | | | |
| 4. Septic Tanks/Drain Fields: Any known problems? | Yes | **No** | N/A | UNK |
| Location of tank: _____ | | | | |
| Date tank last cleaned: _____ | | | | |
| 5. Sewer Systems: Any known problems? | Yes | **No** | N/A | UNK |
| Any known repairs? | Yes | **No** | N/A | UNK |
| If yes, date of repairs/replacement: _____ | | | | |
| 6. Heating System(s): Any known problems? | Yes | **No** | N/A | UNK |
| Any known repairs? | Yes | **No** | N/A | UNK |
| If yes, date of repairs/replacement: _____ | | | | |
| 7. Central Cooling System(s): Any known problems? | Yes | **No** | N/A | UNK |
| Any known repairs? | Yes | **No** | N/A | UNK |
| If yes, date of repairs/replacement: _____ | | | | |
| 8. Plumbing System(s): Any known problems? | Yes | **No** | N/A | UNK |
| Any known repairs? | Yes | **No** | N/A | UNK |
| If yes, date of repairs/replacement: _____ | | | | |

Exhibit 2 - Page 1 of 3

DocuSign Envelope ID: 95CE7562334E4F5D4834E28DC855BDF6

E-FILED 2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

9.   Electrical System(s): Any known problems?                                                    Yes   [No]   N/A   UNK
     Any known repairs?                                                                           Yes   [No]   N/A   UNK
     If yes, date of repairs/replacement:                 _____

10.  Pest Infestation (e.g., termites, carpenter ants): Any known problems?                       Yes   [No]   N/A   UNK
     If yes, date(s) of treatment:                        _____
     Any known structural damage?                                                                 Yes   [No]   N/A   UNK
     If yes, date of repairs/replacement:                 _____
     Any known inspections?
     If yes, date of last report:                         _____               Yes   [No]   N/A   UNK
     and results:                          _____

11.  Asbestos: Any known to be present in the structure?                                          Yes   [No]   N/A   UNK
     If yes, explain:                      _____

12.  Radon: Any known tests for the presence of radon gas?                                        Yes   [No]   N/A   UNK
     If yes, date of last report:                         _____
     and results:                          _____

13.  Lead-Based Paint: Any known to be present in structure?                                      Yes   [No]   N/A   UNK

14.  Flood Plain: Do you know if the property is located in a flood plain?                        Yes   [No]   N/A   UNK
     If yes, what is the flood plan designation:          _____

15.  Zoning: Do you know the zoning classification of the property?                               Yes   [No]   N/A   UNK
     If yes, what is the zoning classification:           _____

16.  Covenants: Is the property subject to restrictive covenants?                                 Yes   [No]   N/A   UNK
     If yes, attach a copy or state where a true, current copy of the covenants can be obtained.:

17.  Shared or Co-Owned Features: Any features of the property known to be shared in
     common with adjoining landowners, such as walls, fences, roads, and driveways whose use
     or maintenance responsibility may have an effect on the property?                            Yes   [No]   N/A   UNK

     Any known "common areas" such as pools, tennis courts, walkways, or other areas
     co-owned with others, or a Homeowner's Association which has any authority over the
     property?                                                                                    Yes   [No]   N/A   UNK

18.  Physical Problems: Any known settling, flooding, drainage or grading problems?               Yes   [No]   N/A   UNK

19.  Structural Damage: Any known structural damage?                                              Yes   [No]   N/A   UNK

20.  See attached Disclosure of Information on Lead-Based Paint and/or Lead- Based Hazard
     and the attached pamphlet, Protect Your Family from Lead in Your Home.

You MUST explain any "YES" response(s) above. Use the back of this statement or additional sheets as necessary. If reports
are attached, identify the reports and the questions to which they pertain.

_____
_____
_____
_____
_____

Exhibit 2 - Page 2 of 3

E-FILED 2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

**SELLER(S) DISCLOSURE:**

Seller(s) discloses the information regarding this property based on information known or reasonably available to the Seller(s). The Seller(s) has owned the property since_____ . The Seller(s) certifies that as of the date signed this information is true and accurate to the best of my/our knowledge.

Seller(s) acknowledges requirement that Buyer(s) be provided with the "Iowa Radon Home-Buyers and Sellers Fact Sheet" prepared by the Iowa Department of Public Health.

Seller _____        Seller _____

Date: 3/1/2018                                  Date: _____


**BUYER(S) ACKNOWLEDGEMENT:**

Buyer(s) acknowledges receipt of a copy of this Disclosure Statement. This Disclosure Statement is not intended to be a warranty or to substitute for any inspection the Buyer(s) may wish to obtain.

Buyer(s) acknowledges receipt of the "Iowa Radon Home-Buyers and Sellers Fact Sheet" prepared by the Iowa Department of Public Health.

Buyer _____        Buyer _____

Date: 3/1/2018                                  Date: _____

Exhibit 2 - Page 3 of 3

DocuSign Envelope ID: 9EC575362245-455E-9312-F38DCB85E0F6

# QC RENTAL PROPS LLC

## REHAB BID

| | |
|---|---|
| ï Hot water heater, furnace, A/C unit checked | ï Repair all windows/screens- must open and lock |
| ï Remove carpet (unless advised otherwise) | ï Install smoke and CO detectors with batteries |
| ï Remove trash | ï Install deadbolts (keyed same included and non locking door handles) |
| ï Replace all light fixtures or fans and bulbs | |
| ï Replace all outlets/switches/covers (white) | ï Repair/replace screen doors as needed |
| ï Caulk/repair all door handles | ï All faucets will be replaced with Delta |
| ï Remove/Replace all door handles/blinds | ï Install handrails on areas with 3 or more steps |
| ï Install vinyl tile floor in bathrooms and kitchen | |
| ï Basements painted (white walls/gray floors) | ï Gutters properly attached and cleaned |
| ï Replace all toilets (American Standard Cadet 3) | ï Down spouts and extensions properly attached |
| ï Install new cabinet hardware | |
| ï Install house numbers on house (visible at street) | ï Fascia, soffits, and window trims covered, replace, wrap, or paint |
| ï If on alley add house numbers on back/garage | ï All exterior rotted wood will be replaced |
| ï White cabinet installed above toilet | ï Rotted wood around windows will be replaced/wrapped |
| ï Sump pump installed in basement | |
| ï 15 inches of insulation must be present in attic | ï All garage doors function and lock (If Applicable) |
| ï All holes in foundation must be fixed | |
| ï Foundation painted grey | ï All porches painted including railing |
| ï All broken siding fixed | ï All broken siding fixed |
| ï Exterior Power washed | |

## SCOPE OF WORK- 915 Wells st Burlington

ï All trash will be removed

ï Kitchen appliances replaced

ï Flooring will be repaired/replaced

ï Walls and ceilings will be repaired, prepped, and painted

ï Kitchen cabinets will be painted, countertop, sink, and faucet replaced

ï Toilet, vanity, medicine cabinet and faucets will be replaced in bathrooms, surround will be replaced

ï Windows/screens will be repaired

ï Doors replaced

ï Outlets, switches, and lights will be replaced and GFI's added where needed

ï Drains will be cleared, house cleaned and exterior spruced up

## Total: $45,000

Exhibit 3 - Page 1 of 1

E-FILED  2021 AUG 20 11:06 AM SCOTT - CLERK OF DISTRICT COURT

| | |
|---|---|
| IN THE IOWA DISTRICT COURT FOR SCOTT COUNTY | |
| JRG GROUP, LLC,<br><br>                                    PLAINTIFF,<br><br>VS.<br><br>EASY STREET PROPERTY MANAGEMENT, LLC, QC RENTAL PROPS, LLC, MATTHEW LARSON, AND TRINA HANSSEN,<br><br>                                    DEFENDANTS. | CASE NO. (SEE PAGE 2)<br><br><br>ORIGINAL NOTICE<br><br>(FILED IN AN ELECTRONIC FILING COUNTY) |

TO THE ABOVE-NAMED DEFENDANTS:

You are notified that a Petition has been filed in the office of the Clerk of this Court, naming you as a Defendant in this action.  A copy of the Petition (and any documents filed with it) is attached to this notice.  The attorney for the Plaintiff is Daniel P. Kresowik, whose address is Brick Gentry P.C., 6701 Westown Parkway, Suite 100, West Des Moines, Iowa 50266.  That attorney's phone number is (5l5) 274-l450; facsimile number (5l5) 274-l488.

You must serve a motion or answer within 20 days after the service of this Original Notice upon you and, within a reasonable time thereafter, file your motion or answer electronically with the Iowa Court System.  If you do not, judgment by default may be rendered against you for the relief demanded in the Petition. See page 2 regarding Iowa Court Rules Chapter 16 for general rules and information on electronic filing, and Chapter16 Division VI regarding the protection of personal information in court filings.

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at 563-328-4145.  (If you are hearing impaired, call Relay Iowa TTY at l-800-735-2942).


CLERK OF COURT
Scott County Courthouse
Davenport, IA 52801

E-FILED  2021 AUG 20 1:55 PM SCOTT - CLERK OF DISTRICT COURT

## Iowa Judicial Branch

*Case No.*   **LACE134157**

*County*   **Scott**

*Case Title*   JRG GROUP LLC VS EASY STREET PROPERTY MGMT ET AL

You must file your Appearance and Answer on the Iowa Judicial Branch eFile System, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless the court has excused you from filing electronically (*see* Iowa Court Rule 16.302).

Register for the eFile System at www.iowacourts.state.ia.us/Efile to file and view documents in your case and to receive notices from the court.

For general rules and information on electronic filing, refer to the Iowa Rules of Electronic Procedure in chapter 16 of the Iowa Court Rules at www.legis.iowa.gov/docs/ACO/CourtRulesChapter/16.pdf.

Court filings are public documents and may contain personal information that should always be kept confidential. For the rules on protecting personal information, refer to Division VI of chapter 16 of the Iowa Court Rules and to the Iowa Judicial Branch website at www.iowacourts.gov/for-the-public/representing-yourself/protect-personal-information/.

*Scheduled Hearing:*

If you need assistance to participate in court due to a disability, call the disability access coordinator at **(563) 328-4145** . Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942). For more information, see www.iowacourts.gov/for-the-public/ada/. **Disability access coordinators cannot provide legal advice.**

*Date Issued*  **08/20/2021 01:55:34 PM**



*District Clerk of* Scott                    *County*

**/s/ Cindy Cooksey**